JAMES STARKEY

*vs.*

THE CITY OF MINNEAPOLIS.

Under the defendant's charter (*Special Laws*, 1867, *ch.* 19), executory contracts entered into by the common council on behalf of the city, with third persons for the opening, grading, repairing and cleansing of the streets, alleys, public grounds, reservoirs, cisterns, gutters, sewers and sidewalks within the city, to be valid must be in writing.

Said council, or its authorized committee, could alone make an executory contract for such work so as to bind the city, and no verbal executory agreement by them to employ plaintiff to construct a sewer within the city would bind defendant so to employ him, and plaintiff must be taken to know it. Nothing in defendant's charter binds it to advertise for offers, or to contract for the work with the lowest bidder.

In reply to an advertisement, proposals for constructing a sewer on Third street in Minneapolis, to be completed by a day named, and stating that bonds in a specified sum would be required for the performance of the work, plaintiff seasonably furnished a proposal to " build the sewers in Minneapolis" at certain specified rates and prices for the different kind of work required in the construction of a sewer, and the complaint also alleged, that upon due consideration thereof, the defendant having ascertained that plaintiff's bid was, as it in fact was, the lowest and best bid, awarded the contract to the plaintiff, and that to such award the plaintiff then and there duly assented and consented. *Held*, that assuming the entire freedom and capacity of the defendant to contract in respect of the construction of such sewer, as if it had been a private person, the complaint does not state an agreement by defendant, binding upon itself, that the plaintiff should do the work. It is not, therefore, liable to plaintiff because of its refusal to permit him to do it.

This is an appeal, by the plaintiff, from the order of the court of common pleas of the county of Ramsey, sustaining a general demurrer to the complaint. The case is fully stated in the opinion.

DAVIS & O'BRIEN, for Appellant.

A. N. MERRICK, for Respondent.

*By the Court.*—RIPLEY, CH. J.—In this action the plaintiff seeks to recover because of the defendant's refusal to permit him to do certain work for the defendant. To enable him to do so, the defendant must have made an agreement with him, binding upon itself, that he should do said work, and the question is, whether or not the complaint states such an agreement.

Assuming the entire freedom and capacity of the defendant to contract in respect of the work, as if it had been a private person, that part of the complaint upon which the plaintiff manifestly relies seems to contain no such statement. The only consideration anywhere alleged for any promise by defendant, is a promise of the plaintiff. A promise is a good consideration for a promise, and it is so previous to performance and without performance. A mere promise to do an act at a future time is a sufficient consideration for an engagement to the party making such promise. But where the bare promise of the plaintiff is the only consideration for the promise, it must appear that the promises were made mutually and concurrently. There must be a reciprocity of obligation, so that if the fact of the promise of one party not being binding on him would leave the other party without a consideration for his promise, the engagement of that other party is not obligatory. *Chitty on Cont. p.* 46.

A promise is not a good consideration for a promise ‚unless there is an absolute mutuality of engagement, so that each party has the right at once to hold the other to a positive agreement. 1 *Pars. on Cont.* 449. Thus a contract to render services is not binding if there be no corresponding obligation to receive them. *Chitty on Cont.*, *p.* 472 ; *Sykes v. Dison,* 9 *Ad. & El.* 693.

In the case at bar, a promise by the plaintiff to do the work would not bind him, if there were no corresponding obligation on the part of the defendant to permit him to do it.

Accordingly the ordinary mode of declaring upon an executory contract for work and labor, · for instance, where the plaintiff, as in this case, seeks to recover for not being allowed to do the work, is that the parties mutually agreed, the one to do the work and the other to employ him ; that plaintiff offered and defendant refused to permit him to do it. 2 *Ch. Pl.* 424, *et seq.*

Instead of this, however, the plaintiff states certain acts of the parties, contending that they constitute a contract binding the defendant to employ him to do the work. The first of these is the advertisement inviting proposals for the work. The reservation of the right to reject any and all bids was ' entirely superfluous. Nothing in defendant's charter bound it to advertise for offers or to contract for the work with the lowest bidder. It was no more bound to accept an offer because it was the lowest than an individual would have been. *People vs. Croton Aqueduct Board,* 9 *Barb.* 259.

When an owner being about to erect a building invites proposals or offers from masons, carpenters, etc., specifying the terms upon which they will perform the work, the owner is not bound (in the absence of an express pledge or agreement,) to employ the party who offers to do the work at the lowest price. *Topping v. Swords,* 1 *E. D. Smith,* 609. He is no more

bound to employ the lowest bidder than to build the house at all. The advertisement was but a question addressed to the plaintiff, as one of the public, whereby the defendant asked him to state the terms upon which he would do the work, when and as specified. But it did not bind the defendant to employ the plaintiff, if his should be the lowest bid, to construct the sewer, nor to construct the sewer at all.

The written proposal of the plaintiff was not responsive to the question. That referred to a sewer to be built on Third street according to the plans, etc., on or before September 30th, the contractor giving bonds, etc. The offer is to build " the sewers in Minneapolis according to the plans and specifications," at certain specified rates. Whether or not the plaintiff meant this for an offer to build a sewer on Third street by Sept. 30th, etc., is not the question. He does not offer to do it.

So far, then, we have nothing but an offer by plaintiff to build the sewers in Minneapolis at certain specified rates. To make this obligatory upon the plaintiff, it must have been accepted by the defendant by a simple acceptance, without the introduction of any new terms.

The complaint alleges, that upon consideration of the plaintiff's bid, with those of others, and it having been ascertained to be, as it was, the lowest and best offer, it " was duly awarded to this plaintiff by the defendant," i. e., the defendant duly awarded the plaintiff's offer to the plaintiff. This, literally taken, has no meaning at all.. But the complaint, in subsequently referring to this action of the defendant, states, that " at the time when the *contract was awarded as aforesaid*, he was ready and willing to commence, etc. The complaint will therefore be considered as if it read that on or about April 20th the defendant awarded the contract to plaintiff.

To award, is to adjudge, to give or assign by sentence or

Starkey v. The City of Minneapolis.

judicial determination. "The contract" we can understand either of an agreement between two parties upon valid consideration to do or not to do a particular thing, or of a written instrument which embodies the agreement. The latter is not meant, but we are to understand that the defendant adjudged the agreement to do this work to the plaintiff, that is to say, it decided that it would agree with him to do it. Now, this is neither an acceptance of the plaintiff's offer to build the sewers in Minneapolis, nor a promise nor an offer made to him. It is a decision by the defendent that it will agree with plaintiff upon good consideration to do something which plaintiff has not yet offered to do, and defendant was as free the next moment to change that decision, as it was to decide to build no sewer at all on Third street, or elsewhere. One might, it is true, use language incorrectly, and say that he "awarded a contract" to one, meaning that he accepted an offer *as made*. In such a case his meaning would be a question for the jury. In the construction of pleadings, however, words are to be understood in their plain and ordinary sense, and so understood, if a pleading does not state a cause of action, the court must necessarily hold it insufficient.

In the present case, for instance, if it was meant by plaintiff, and so understood by defendant, that he offered to build the Third street sewer at those prices by Sept. 30th, and giving bond therefor to defendant's satisfaction in $10,000 and that the defendant accepted his offer as meant, why not say so?

We must conclude on these pleadings that it was because the fact was otherwise. But the complaint proceeds to say "to which award this plaintiff then and there duly assented and consented to the same." That is to say the plaintiff "assented and consented" to the defendant's decision to agree with him for the performance of this work.

The question recurs: if there was a mutual agreement, the

defendant to employ the plaintiff, and the plaintiff to do the work, why not say so ? The last statement no more amounts to such an allegation than what preceded it. Such words *per se* import no obligation on the plaintiff's part to do the work A mere assent does not suffice to constitute a contract.

A contract requires the assent of the parties to an agreement, and this agreement must be obligatory, and, as we have seen, the obligation must in general be mutual. This is sometimes briefly expressed by saying that there must be a request on one side and an assent on the other. 1 *Pars. on Cont.* 475.

So it may be asked, where is there in the present case anything that amounts to an allegation of a request by the defendant to the plaintiff to do this work, and an assent to such request on his part ? If the pleader uses language which does not allege an agreement, it must be understood that he does so because the parties did not make an agreement. The plaintiff's brief relies upon these allegations of the complaint as stating a binding agreement on the part of the defendant then made to employ him to construct this sewer. Such, too, is plainly the theory upon which the residue of the complaint proceeds.

But since we think differently, it may be urged further that a subsequent paragraph states such an agreement, if the one which we have been considering does not. We refer to the following, viz.: "That thereafter, and on or about April 29th, the defendant informed the plaintiff that instead of constructing the said sewer on Third street, it would probably wish the same to be made on Washington avenue, which is another public street in said city, which the plaintiff agreed to do for the same terms and price as expressed in his aforesaid bid, provided the defendant should wish to change the said location."

" That this plaintiff agreed to build either one of the said

sewers for the same terms and price as expressed in the said bid, and that in consideration thereof the defendant agreed to pay him therefor the prices expressed in said bid."

Upon this, it is, in the outset, observable that it does not appear therefrom that the defendant ever made any election as to the sewers, or that plaintiff agreed to build both sewers at the prices stated. The question arises, therefore, as to whether or not such agreement was not contingent upon such election. But it is not necessary to decide this point, for the reason hereinafter appearing, and we will assume that such election, if necessary to the validity of the agreement, had been made. In that case, according to the statement thereof as above, the inference would be that the supposed agreement was not in writing, and allegations which follow make it plain that there were oral communications between the plaintiff and those who acted in behalf of the city; for it is stated that the defendant afterwards requested time of the plaintiff in which to prepare the form of a bond, and of a written contract, to submit to plaintiff for his execution. Nor do we understand that the plaintiff contends that a different construction should be put upon the complaint in this respect.

Assuming, as we shall assume, that the statements, that "in consideration thereof the defendant agreed," etc., amount to an allegation that the defendant agreed to employ and pay plaintiff, the allegations above quoted, if it were a transaction between individuals, would state a valid executory contract binding on defendant.

Is the defendant as free so to bind itself as an individual would be?

This is to be ascertained from its charter. No question arises in this case as to its liability upon implied contracts, for the plaintiff alleges an express contract, if anything.

By its charter the defendant is made capable of contracting and being contracted with, but this is to be understood with reference to the objects for which it was created, and the conditions and limitations, if any, which are prescribed as to the occasions upon, and the cases and manner in which, such power of contracting is to be exercised. It can contract only through its authorized officers and agents. The city comptroller shall make, or cause to be made, estimates of the expenses of any work to be done by the city and countersigns all contracts made in behalf of the city, and certificates of work authorized by any committee of the common council, or by any city officer. And every contract made in behalf of the city, or to which the city is a party, shall be void unless signed by the comptroller. He is to keep accurate books of account, showing at all times the precise financial condition of the city, and accounts with all receiving and disbursing officers, showing the amount received from the different sources of revenue, and the amount disbursed under the direction of the common council. If before the first day of January of any year the amount expended or to be expended chargeable to any city fund shall be equal to three-fourths of the tax authorized to be raised or revenue estimated for such fund, he shall report at once the same to the common council, and he shall not countersign any contract chargeable to such fund until the amount of taxes actually collected be ascertained; and during the remainder of the fiscal year he shall not countersign any contract the expenses of which shall exceed the revenue actually collected for the fund to which such expenses are chargeable. He shall keep a record of all his acts and doings, and keep a book in which he shall enter all contracts, with an index thereto ; and such record shall be open to the inspection of all parties interested. *Spe. Laws*, 1867, *ch.* 19, *sub. ch.* 1, *sec.* 1, *sub. ch.* 3, *secs.* 14, 15, 17, 18.

Starkey v. The City of Minneapolis.

The contracts here meant must necessarily be in writing. One object at least, for making the signature of the comptroller essential, is sufficiently apparent, viz.: that the city shall not contract debts which it has not the means to pay.

The charter, however, elsewhere vests in the common council power to levy a special tax upon property, as specified, for the purpose, among other things, of constructing sewers, upon the proviso, however, that such taxes shall in no year exceed six mills on the dollar of assessed valuation, and that no debt shall be incurred or created " except pursuant to the authority herein expressly given for that purpose, and no order shall be issued upon the city treasury exceeding the amount collected or assessed and in process of collection."

It also provides that the common council shall have power to order and contract for the opening, repairing and cleansing of the streets, alleys, public grounds, sewers and sidewalks within the city. *Sub. ch.* 5, *sec.* 2 ; *sub. ch.* 6, *sec* 2.

That there is a distinction between ordering and contracting for the doing of these things, is evident, especially in connection with other parts of the charter. Thus by *sub. ch.* 8, *secs.* 2 *and* 3, if a lot owner does not build or repair the sidewalk in front of his lot, the common council may *order* the same to be done by the street commissioner, and the cost is to be reimbursed by tax on such lot. So it is the street commissioners's duty to hire laborers, and carry into effect all orders of the council in relation to work or improvements on streets, roads, bridges and public grounds. *Sub. ch.* 3, *sec.* 8.

The word " contract " is here plainly used in the same sense in which it is in *sub. ch.* 9, *sec.* 1, providing that the common council shall have authority to contract with any person or corporation for the lighting of such streets as they deem proper. The word occurs only in the sections aforesaid, and it plainly has reference to executory contracts for such work.

But it is manifest that such executory contracts are precisely those which are within the mischief intended to be guarded against by the provisions above quoted as to the council and comptroller, against running in debt in advance of income.

The charter plainly intends that these contracts which the council is empowered to enter into, whether for making sewers or lighting streets, must be signed by the comptroller to be valid.

If the common council has power to make a verbal contract for such purposes, the object of these provisions is defeated. To say that the charter means that the comptroller shall sign such executory contracts as the common council see fit to put in writing, would stultify the legislature. So would the suggestion that only contracts which the statute of frauds required to be in writing, need be signed by him. The charter nowhere else authorizes any officer or board to "contract" for anything. The authority is to contract for work and labor, which is not in its nature within the statutes. If, then, such contracts need not to be in writing, and consequently cannot be signed by the comptroller, the intended check upon the council, as to executory contracts for such work, does not exist. Taking the charter as a whole, as it must be taken, it is manifest that the meaning is, that the council may contract in writing with individuals for these purposes, such contracts to be signed by the comptroller.

We are, therefore, of opinion that under this charter no such verbal agreement by the common council, or any authorized committee thereof, (and these alone could contract so as to bind the city,) to employ the plaintiff to construct these sewers would bind the defendant to employ him.

That plaintiff was ready to begin at once, and the defendant for the reasons alleged put him off is therefore immaterial.

Starkey v. The City of Minneapolis.

The plaintiff must be taken to know that the defendant was not bound to employ him.

As to the statement that it agreed to prepare a form of written contract to submit to him for his execution within a reasonable time, it is to be observed that the plaintiff alleges that he was always ready and willing to give the bond referred to in the notice, but he does not allege that he was willing to enter into a written contract.

As to the allegation with respect to the men, etc., brought from Brainerd to Minneapolis, this action is not brought to recover for any expenses incurred therein, and if it were, the plaintiff knew that he had no contract with the defendant, and if he brought them, as he alleges, in consequence of the award, and for the sole purpose of going on with the work, he did so, knowing that the defendant was in no way bound to employ him.

Order appealed from affirmed.