[Filed June 7, 1888.]

## G. F. BEERS, APPELLANT, *v.* DALLES CITY, RESPONDENT.

CORPORATION — POWERS — CHARTER. — A corporation being the creature of the law, it possesses only those properties which the charter of its creation confers upon it, either expressly or as incidental to its very existence.

CHARTER OF DALLES CITY — POWER OF COUNCIL — SEWERS. — Section 63, Acts of 1880, page 1, incorporating Dalles City, confers upon the common council of the city power without limit or restriction to establish a system of sewerage, and to construct and repair drains and sewers.

STATUTORY CONSTRUCTION — SECTIONS 63 AND 91. — These sections relate to the same subject and must be construed together. Under section 63 the council might exercise the power in any suitable manner, and the expense would be payable out of the general fund of the city; but section 91 enables the council in its discretion to charge the costs of drains and sewers upon the property directly benefited. If the council fail to exercise this discretion and to charge the expense on the property, it is payable out of the general fund.

MUNICIPAL CORPORATION — POWER — HOW EXERCISED. — When the common council of a municipal corporation is vested with full power over a subject, and the mode of the exercise of such power is not limited by the charter, it may exercise it in any manner most convenient. In such case the corporation may act by its officers or properly authorized agents, and make contracts to carry into effect the granted powers the same as individuals.

MUNICIPAL CORPORATIONS — LIABILITY. — Unless prohibited by its charter, a municipal corporation is liable when a person is employed for it by one assuming to act in its behalf, and such person renders the services according to the agreement, with the knowledge of its officers, and without notice that it is not recognized as valid and binding.

SECTION 128 OF THE CHARTER — ORDINANCE — CONTRACT IN WRITING. — The application of this section is limited to those cases where the power of the corporation must be exercised by ordinance under the charter, and where the work must be let to the lowest responsible bidder after notice. It does not apply to cases where the council is directly authorized to do the work without the formality of entering into an express contract.

On Rehearing.

PLEADING — MATERIAL FACT NOT ALLEGED. — An answer constitutes a part of the record on appeal, and on demurrer its sufficiency must be determined by the facts set forth, and it cannot be aided or supported by extrinsic facts.

CHARTER — CONSTRUCTION OF THE TERM "CONTRACT." — The term "contract," used in section 128 of the charter of Dalles City, must be construed to mean such contracts as are named in other sections of the charter, when an ordinance and notice are necessary prerequisites to create a legal liability against the city.

APPEAL from Wasco County.

*Bennett & Wilson,* for Appellant.

*W. Lair Hill, F. P. Mays,* and *Atwater & Story,* for Respondent.

Strahan, J.—This is an action against Dalles City to recover for the services of certain laborers employed by the street commissioner, which labor was performed in laying down a certain sewer within the corporate limits of said city. The amended complaint, after alleging that the defendant was a municipal corporation at and during all the times thereinafter stated, alleges that during the month of May, 1884, one W. F. Butts, the street commissioner of the defendant corporation, acting by, through, and under the directions and authority of the defendant, expressly given and commanded, employed for the defendant certain laborers to perform work and services for the defendant in laying down a certain sewer within the corporate limits of the defendant corporation, which said laborers performed work and services thereon for the defendant of the reasonable value and the agreed price and amount of $273.75, which work, labor, and services, the defendant accepted and received, and in order to satisfy and pay said laborers for said labor and services ordered that orders or warrants be drawn upon the treasurer of the defendant corporation therefor, and in pursuance thereof two orders or warrants were made, executed, and delivered to the said W. F. Butts, of which the following are substantial copies:—

"Class 2, number 942, $271.

"Dalles City, Oregon, May 30, 1884.

"*Treasurer of Dalles City:* Pay to W. F. Butts, or bearer, two hundred and seventy-one dollars, general fund Union Street sewer. By order of the city council.

"Geo. A. Liebe, Mayor.

"T. A. Hudson, Recorder."

Another order for $102.75, dated May 31, 1884, is then set out, and the complaint proceeds: "That immediately thereafter said orders or warrants were presented to said treasurer and payment thereof demanded, which was refused for want of funds, and thereupon said warrants were, for a valuable consideration, to wit, the sum of $273.75, in lawful money of the United States, assigned and transferred to this plaintiff, who is now the

owner and holder thereof." It is then alleged that said sum of $273.75 was paid to said laborers in satisfaction for said work, labor, and services so performed for said defendant, and that said defendant received the benefit thereof; and said Butts in the whole of said transactions acted for the defendant and under its directions.

Many of the material allegations of the complaint are denied by the answer, and then said answer states: "That the alleged work and services referred to in said amended complaint, and which are sought to be charged to the defendant, if the same or any part was performed, was not let to the lowest or any bidder, and was unauthorized by the defendant, and that no contract authorizing the same, or any part of it, was ever authorized by ordinance or made in writing, and by order of the council of the defendant, signed by the mayor or recorder on behalf of the defendant, and no ordinance was ever passed by the defendant authorizing said W. F. Butts, or any other person or persons, to contract for or bind the defendant without a contract in writing for said alleged work or services, or any part of either, and no contract in writing was ever authorized or made in any way by the defendant concerning any of the matters alleged in sai l amended complaint, and no ordinance was passed by the defendant appropriating or in any way providing for the payment of said alleged $273.75, or any part of it, or for the payment for said alleged work and services, or for any part of either; and that the two alleged orders or warrants copied in complaint; was each drawn by the mayor and recorder of the defendant without any authority whatever from the defendant, and without any ordinance of the defendant directing such action, and without any appropriation made therefor, and was to pay for the alleged work and services, which if performed at all were performed without any authority from or any contract with the defendant whatever."

The plaintiff demurred to the new matter in the answer, on the ground that the same was not sufficient to constitute a defense; which demurrer was overruled, and the plaintiff failing to plead further to said new matter in the defendant's answer, on motion

the court gave final judgment in favor of the defendant for its costs and disbursements, from which this appeal is taken.

The plaintiff in his notice of appeal assigns two grounds of error, upon which he intends to rely upon the appeal: *First*, error of the court in overruling said demurrer; *second*, error of the court in granting the defendant's motion for judgment. These two assignments practically present but one question, and that is whether or not the new matter pleaded in the answer constituted a defense.

1. A municipal corporation is called into being by the State for its own purposes, and it is endowed with that measure of power and authority which the act creating it confers, and such implied power and none other as is necessary to carry into effect the powers which are expressly enumerated and delegated to it. In *Dartmouth College* v. *Woodward*, 4 Wheat, 636, Chief Justice Marshall, with great force and clearness, defined a corporation thus: "A corporation is an artificial being, invisible, intangible, and existing only in contemplation of law. Being the mere creature of the law, it possesses only those properties which the charter of its creation confers upon it, either expressly or as incidental to its very existence." A brief reference to the powers and limitations imposed upon the defendant is therefore necessary to determine the extent of its liability and the measure of its duty. Section 63 of the charter is as follows:—

"Sec. 63. The council is authorized and empowered to lay out, establish, vacate, widen, extend, and open streets, or parts of streets, and alleys, and parts of alleys, in said city, and appropriate private property for that purpose, and to establish or alter the grade of any street, or part thereof, and to improve the sidewalks, pavements, streets, and parts of streets, within the city limits, making full or partial improvements thereof, and to establish a system of sewerage, and to construct and repair drains and sewers; and it has full power to determine and provide for everything necessary and convenient to the exercise of the authority herein granted."

"Sec. 64. No improvement mentioned in section 63 can be undertaken or made without fourteen days' notice thereof, being

first given by publication in a newspaper published in Dalles City, except as in this act otherwise provided."

Section 65 provides how the notice must be given, and that it must specify with convenient certainty the street, or part thereof, proposed to be improved, or of which the grade is proposed to be established or altered, and the kind of improvement which is proposed to be made. Section 66 authorizes the owners of two thirds of the property adjacent to such street, or part thereof, within fourteen days from the final publication of the notice, to file with the recorder a written remonstrance against the proposed improvement, grade, or alteration thereof, and thereupon the same shall not then be further proceeded with or made. Section 67 authorizes the council, within six months from the final publication of notice, if no such remonstrance be made and filed, to establish the proposed grade, or alteration thereof, or to commence to make the proposed improvement as thereinafter provided. Section 70 directs, when the probable cost of the proposed improvement has been ascertained and determined, and the proportionate share thereof has been assessed as provided in section 69, the council must declare the same by ordinance, and direct the recorder to enter a statement thereof in the docket of the city liens, as provided in the next section. Several succeeding sections define with particularity the method of enforcing such lien against property, and section 82 says: "Each lot, or part thereof, within the limits of a proposed street improvement shall be liable for the full cost of making the same upon the half of the street in front or abutting upon it." Section 86 provides that the council must provide by ordinance for the time and manner of doing the work on any proposed improvement, subject only to the following restrictions, viz: After proper notice the work must be let to the lowest responsible bidder, for either the whole work necessary to complete the proposed improvement, or for such subdivision thereof as will not materially conflict with the completion of the remaining portion; but no bid for a fractional part of any class of work, chargeable to any block fronting upon the street to be improved, shall be received, and a bid by the owner or owners of two

thirds of the property in a block fronting on a street proposed to be improved must be accepted; *provided*, that the same is as low as any other bid, and that the work can be so subdivided without injury to the owners of adjacent or other property. The balance of the section provides further details in relation to the bids. Section 87 provides, if upon completion of any improvement it is found that the sum assessed therefor upon any lot or part thereof is insufficient to defray the cost thereof, the council must ascertain the deficit, and declare the same by ordinance, and when so declared, the recorder must enter the sum of the deficit in the docket of city liens in a column reserved for that purpose in the original entry, with the date thereof, in like manner and with like effect as in case of the sum originally assessed, and shall also be payable and may be collected in like manner and with like effect as in the case of such sum so assessed. Section 88 provides for a return of the money to the property owner in case more is collected than is necessary to pay for the improvement, and section 89 declares that all money paid or collected upon assessments for the improvement of streets shall be kept as separate fund, and in nowise used for any other purpose whatsoever, and that moneys assessed shall bear interest at legal rate till paid. Section 91 is as follows:—

"Sec. 91. The council shall have power to lay down all necessary sewers and drains, and cause the same to be assessed on the property directly benefited by such drain or sewer; but the mode of apportioning estimated costs of improvements of streets prescribed in sections 82 and 83 of this act shall not apply to the construction of such sewers or drains, and *when the council shall direct the same to be assessed on the property directly benefited*, such expense shall in every other respect be assessed and collected in the same manner as provided in case of street improvements; *provided*, that the council may in its discretion appoint three disinterested persons to estimate and determine the proportionate share of the cost of such sewer or drain, to be assessed to the several owners of the property benefited thereby."

Section 92 empowers the council to *repair* any street, alley, drain, or sewer, or part thereof, whenever it may deem it expe-

dient, and to declare by ordinance before doing the same whether the cost thereof shall be assessed upon adjacent property, or paid out of the general fund of the city; and if the council declare that a proposed *repair* shall be made at the cost of the adjacent property thereafter, the proposed repair is to be deemed an "improvement," and shall be made accordingly; but if it declare that the same shall be made out of the general fund, said repairs may be made as the ordinance may provide, and be paid accordingly; but it is provided that money shall not be paid out of the general fund for the purposes enumerated in the section, so long as there remains unexpended any portion of the revenue provided for in section 102 of the act. Section 128 of the charter is as follows: —

"Sec. 128. Dalles City is not bound by any contract, or in any way liable thereon, unless the same is authorized by ordinance, and made in writing, and by order of the council, signed by the mayor or recorder on behalf of the city. But an ordinance may authorize any officer or agent of the city, naming him, to bind the city without a contract in writing for the payment of any sum of money not exceeding one hundred dollars."

1. These are all of the provisions of the charter in any manner affecting the question presented by this record. They were evidently not drawn with as much care as is desirable, but it is believed the intent of the legislature is plainly expressed, and that is all about which the court has any concern. Section 63 confers upon the city council power without limit or restriction to establish a system of sewerage, and to construct and repair drains and sewers. The sections of the charter from 63 to 91 inclusive relate to the mode in which the power to establish, vacate, widen, extend, and open streets and alleys, and to establish and alter the grade of streets, and to improve sidewalks, pavements, and streets, shall be exercised, and the method of making and enforcing assessments to raise the requisite funds to pay for such improvements. The subject of sewerage is not mentioned in any of these intermediate sections, nor do the powers therein conferred relate to that subject. That entire subject is contained in sections 63 and 91 of the charter, and

those two sections must be construed together.  By section 63 full power over the subject is conferred upon the council, without any provision as to the manner of its exercise or the method of raising money to pay for such sewers or drains.  Under that section the council might exercise the power in any suitable way, and the expense would be payable out of the general fund of the city.  But section 91 again declares the power of the council over this subject, and authorizes the council to assess the cost of such sewers or drains on the property directly benefited, but leaving it discretionary with the council whether it shall be so assessed or not.  The words in this section, "and when the council shall direct the same to be assessed on the property directly benefited," must have the effect to leave it discretionary with the council whether it will make such direction or not.  Unless these words are to have this effect, they perform no office in the sentence whatever.

2. Having reached the conclusion that the council has the power to lay down sewers and drains without making the cost thereof a charge upon the property, it becomes necessary to determine how this power may be exercised.  Upon this subject both sections 63 and 91 are silent.  No doubt under section 91, if the council should determine to make the cost of the sewer or drain a charge upon the property benefited, an ordinance would be the proper and perhaps the only appropriate way in which that could be done; but where the power relates simply to the laying down of a drain or sewer, it does not appear that an ordinance is necessary.  The council having full power over the subject may exercise it in any manner that may be most convenient.  It might appoint a committee of its own members to direct and superintend the work, or it might appoint or designate any other competent and suitable person to do it.  "Public corporations may, by their officers and properly authorized agents, make contracts the same as individuals and other corporations in matters that *necessarily* appertain to the corporation; being artifical persons, they cannot contract in any other way. . . . . "  (1 Dillon on Municipal Corporations, § 455.)

3. The construction which has been given to the charter is

decisive of this case, unless section 128, *supra*, limits or modifies the defendant's liability. I think that section was designed to apply to those cases, and only to those where an ordinance is required by the charter, and where the work is expressly required to be let to the lowest responsible bidder, after notice, as in section 86 of the charter. But in addition to this it seems that such a provision in the charter ought to be limited to executory contracts, and that it can have no application to a contract which has been completely executed on one side. In *Fister* v. *La Rue*, 15 Barb. 323, it was said: "It is well settled, at least in this country, that when a person is employed for a corporation by one assuming to act in its behalf, and goes on, renders the services according to the agreement, with the knowledge of its officers, and without notice that the contract is not recognized, and as valid and binding, such corporation will be held to have sanctioned and ratified the contract, and be compelled to pay for the services according to the agreement. Having availed itself of the services and received the benefits, it is bound in conscience to pay, and will not be heard to say that the original agreement was made by a person legally authorized to contract. This seems to me to be sound law and sound morality as well." To the same effect is *Pixley* v. *Western Pacific R. R. Co.* 33 Cal. 183; *Starkey* v. *City of Minneapolis*, 19 Minn. 203; *City of Cincinnati* v. *Cameron*, 33 Ohio St. 336; *Salomon* v. *U. S.* 19 Wall. 17.

4. This is not a case where the officers of a corporation have exceeded their authority as defined in the charter, nor is it a case where such officers have failed to pursue the requirements of the statute under which they were acting. It is admitted in such cases the statute must be strictly followed, and that a person who deals with a municipal body must see that its charter has been fully complied with. (1 Dillon on Municipal Corporations, § 463.) But the facts of this case do not bring it within these principles. Here the power in question was fully and plainly conferred, and there were no restrictions upon its exercise.

The facts pleaded in the answer, therefore, are insufficient to

constitute a defense, and the court below erred in overruling the plaintiff's demurrer thereto. Its judgment will therefore be reversed and the cause remanded, with directions to sustain the demurrer, and for such further proceedings as may be according to law and the practice of the court.

On petition for rehearing.

[Filed July 2, 1888.]

STRAHAN, J.—Counsel for respondent has filed a petition for a rehearing, in which it is said, in effect, that the common council of Dalles City did direct that in the particular case under consideration, the estimated cost of laying the sewers should be assessed on the property directly benefited. If this be true, the fact should have been distinctly averred in the answer.

It is of no consequence to recite the fact in this petition. The sole question is as to the sufficiency of the pleading demurred to, and that must be determined by what it contains, and it cannot be aided by any matters outside of such pleading. When this case shall be remanded to the court below, if that court shall be of the opinion that it would be in furtherance of justice to allow the answer to be amended so as to present the question raised by this petition for a rehearing, it will have the power to allow it; but it will rest entirely in the discretion of that court whether such amendment, if applied for, will be allowed or not.

On the second point presented by the petition I think the construction placed on section 128 must be adhered to. Any other would render it exceedingly difficult and inconvenient to conduct the affairs of the city. The common council would be compelled to devote much of its time to the consideration and passage of a great number of useless and unnecessary ordinances of no practical utility, on subjects where the business is now usually conducted, and under the direct supervision of the council, or a committee thereof, or by some officer or agent specially appointed for that purpose. Reading and construing the several sections of the charter together, I have no doubt the term "contract," as used in this section, means such contracts as are here referred to in other parts of the charter where ordinances and notices are

Points decided.

specially required, and where an express contract must be entered into between the city and the contractor. The case of *Sylvester* v. *Dalles City* will be governed by this case.

Upon the record as presented there appears no sufficient cause for a rehearing, and it must be denied.