## CITY OF ASTORIA v. AMERICAN LA FRANCE FIRE ENGINE CO.

### (Circuit Court of Appeals, Ninth Circuit.    May 17, 1915.)

### No. 2579.

1. MUNICIPAL   CORPORATIONS   ☞244—CONTRACTS—VALIDITY—MANNER   OF MAKING CONTRACT.

The charter of the city of Astoria, Or., section 38, confers on the city council power to establish and maintain a fire department, to provide engines and other apparatus therefor, and to appoint fire commissioners. Section 39 provides that the power given the council by section 38 can only be exercised by ordinance, and section 124 provides that the city "is not bound by any contract or in any way liable thereon unless the same is authorized by city ordinance and made in writing and by order of the council," with the exception of contracts for the payment of a sum not exceeding $100. The council by ordinance created a fire department and appointed a committee on fire and water, who should be ex officio fire commissioners and should purchase all supplies for the fire department, subject to the ordinances of the city. Such committee entered into a contract for the purchase of a fire engine under authority of a vote of the council adopting their report recommending the same, but a subsequent ordinance providing for payment of the purchase price was vetoed and never became effective, and the city refused to accept the engine. *Held*, that the contract, not being authorized by ordinance as specifically required by the charter, did not bind the city, but was void.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 678–681, 683; Dec. Dig. ☞244.]

2. MUNICIPAL CORPORATIONS ☞61—POWER TO MAKE CONTRACTS—MANNER OF EXERCISE.

Where a city charter, prescribes the mode in which a power conferred on the city shall be exercised, that mode is exclusive, and must be followed whether the power be deemed governmental or proprietary.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 152; Dec. Dig. ☞61.]

3. MUNICIPAL CORPORATIONS ☞248—CONTRACTS—RATIFICATION OF UNAUTHORIZED CONTRACT.

Where a city has power to enter into a contract only in a particular form, or mode, it can ratify an unauthorized contract only by following the same form or mode.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 684–686; Dec. Dig. ☞248.]

In Error to the District Court of the United States for the District of Oregon; Charles E. Wolverton, Judge.

Action at law by the American La France Fire Engine Company against the City of Astoria, Or. Judgment for plaintiff, and defendant brings error. Reversed.

For opinion below, see 218 Fed. 480.

A. W. Norblad, of Astoria, Or. (F. C. Hesse and J. T. Jeffries, both of Astoria, Or., of counsel), for plaintiff in error.

Fulton & Bowerman and Bernstein & Cohen, all of Portland, Or., for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and RUDKIN, District Judge.

RUDKIN, District Judge. [1] This is an action on a written contract to recover the purchase price of certain fire apparatus for the use of the fire-department of the city of Astoria. The contract was entered into on behalf of the city by the committee on fire and water of the common council, and, inasmuch as the validity of that contract is the only question presented for our consideration, a brief reference to the provisions of the city charter and the facts leading up to the execution of the contract becomes necessary. The powers of the city council are largely defined by section 38 of the charter, which contains 57 subdivisions or paragraphs. By paragraph 42 of this section the council has power and authority within the city of Astoria—

"to make regulations for the prevention of accident by fire; to organize, establish and maintain a fire department, whether paid or volunteer; to appoint three competent persons as fire commissioners, and to make and ordain rules for the government of the fire department; to provide engines and other apparatus for the department."

Section 39 provides that the power and authority given to the council by section 38 can only be exercised or enforced by ordinance, unless otherwise provided. Section 124 provides as follows:

"The city of Astoria is not bound by any contract or in any way liable thereon, unless the same is authorized by city ordinance, and made in writing, and by order of the council, signed by the auditor and police judge, or some other person duly authorized, on behalf of the city. But an ordinance may authorize any officer or agent of the city, naming him, to bind the city, without a contract in writing, for the payment of any sum of money not exceeding one hundred dollars."

Section 1 of an ordinance approved June 15, 1897, organized a paid fire department for the city with powers and duties to be exercised by and through the committee on fire and water of the common council. Section 3 of the ordinance provides:

"The committee on fire and water and their successors in office shall constitute and be ex officio fire commissioners of the fire department of the city of Astoria."

Section 11 provides:

"The committee on fire and water, the ex officio fire commissioners, shall purchase all supplies for the fire department and order all necessary repairs subject to the ordinances of the city of Astoria."

Section 15 provides:

"The committee on fire and water, the ex officio fire commissioners, shall report to the common council at least once in each month the expenditures of the department and other matter pertaining thereto, of public interest; and shall in the month of January of each year report in detail to the common council, the annual receipts and expenditures of the department, including a complete inventory of all property in their charge."

On the 21st day of July, 1913, the committee on fire and water filed a communication with the city council, recommending that the committee be authorized to obtain prices on another auto fire apparatus, and submit the same with recommendations at the next meeting of the council. At a meeting of the city council held on the 21st day of July, 1913, this communication and recommendation was adopted by unanimous vote. On the 4th day of August, 1913, a further communica-

tion was presented to the council submitting a price of $9,500 f. o. b. Astoria, for the triple combination pump hose and chemical now in controversy, and recommending that the committee be authorized by the adoption of the report to enter into a contract with A. G. Long, agent of the American La France Fire Engine Company for one type 12, six cylinder combination pump hose and chemical car for the sum of $9,500. This report and recommendation was later adopted by the council by unanimous vote. On the 6th day of August, 1913, the committee on fire and water entered into the contract now in suit with the defendant in error, by the terms of which the defendant in error agreed to sell the fire apparatus in question for the sum of $9,500, delivery to be made at Astoria, Or., within 60 days from approval of contract, and the city agreed to pay therefor the sum of $9,500 within 15 days after delivery and acceptance. Upon the execution of this contract a copy was forwarded by mail to the defendant in error, and the fire apparatus was manufactured and shipped to Astoria, Or., where it arrived during the month of January, 1914. On the 31st day of January, 1914, the committee on fire and water made a written report to the council, stating that the apparatus was acceptable in every way, and recommending the passage of an ordinance providing for the payment of the purchase price. This report was adopted on the 31st day of January, 1914, six members of the council voting in the affirmative, and three in the negative. An ordinance was thereupon introduced and passed the council on the 2d day of February, 1914, authorizing the auditor and police judge to draw a warrant in the sum of $9,500 in favor of the defendant in error in payment of the purchase price as theretofore recommended. This ordinance was submitted to the mayor for his approval, but was by him vetoed, and so far as the record discloses, no further action was taken in regard thereto; at least the ordinance never became operative. On the arrival of the fire apparatus at Astoria the same was tendered by the defendant in error to the plaintiff in error, and was delivered at the headquarters of the fire department. The city refused to accept or pay for the apparatus on the ground that the purchase thereof was never authorized by ordinance, and the present suit followed. The foregoing facts appearing on the face of the complaint, a demurrer was interposed on the ground that the complaint did not set forth a cause of action. The demurrer was overruled, and the plaintiff in error answered over, simply denying that the fire apparatus was tendered to the defendant, or was delivered at the fire headquarters of the city, or at any other place, denied that the same was delivered to the city, and averred that the city never had any contract with the plaintiff as alleged in the complaint. A motion for judgment on the pleadings interposed by the defendant in error was granted, and that judgment is now before us for a review.

Municipal corporations are creatures of the law, and, as said by Chief Justice Marshall in Head v. Providence Insurance Co., 2 Cranch, 156, 2 L. Ed. 229:

"The act of incorporation is to them an enabling act; it gives them all the power they possess; it enables them to contract, and when it prescribes to them a mode of contracting, they must observe that mode, or the instrument, no more creates a contract than if the body had never been incorporated."

See, also, 28 Cyc. 664, and cases cited.

But this rule is elementary, and requires no citation of authorities in its support. If, therefore, the power conferred on the city council of the city of Astoria by section 38 of the city charter to provide engines and other apparatus for the fire department could only be exercised by ordinance, as declared in the succeeding section, or if the contract in suit falls within the provisions of section 124 of the city charter, this action must fail. The power to provide engines and other apparatus for the department can only be exercised by ordinance, unless otherwise provided, and we have been unable to find any provision of the charter providing otherwise. Indeed, this question would seem to be foreclosed by the decision of the Supreme Court of the state of Oregon. Sections 28 and 29 of the charter of the city of Sellwood (Laws of 1889, p. 503), are in all material respects similar to sections 38 and 39 of the charter of the city of Astoria. By paragraph 18 of section 28 of the Sellwood charter the city council was granted power and authority "to provide for the erection of a city jail, house of correction and workhouse, and government and management of the same," and by section 29 the power and authority thus given could only be exercised by ordinance, unless otherwise expressly provided. And in Grafton v. City of Sellwood, 24 Or. 118, 32 Pac. 1026, it was held that the power to provide for the erection of a city jail could only be exercised by ordinance, and that a contract awarded for the construction of a jail building before the ordinance authorizing the same became operative was null and void. In the course of its opinion the court said:

"Subdivision 18 of section 28 of the charter of Sellwood, filed in the office of the secretary of state, February 25, 1889 (Session Laws, 1889, p. 503), gives the council power 'to provide for the erection of a city jail.' Section 29 provides that the power and authority given the council by section 38 can only be enforced and exercised by ordinance, unless otherwise expressly provided. Section 28 contains 41 subdivisions giving power to the council. Section 29 probably refers to section 28 instead of section 38, which relates to the manner of taking an appeal from the action of the council to the circuit court. No jail could be erected without an ordinance for that purpose. When the mode of procedure is specially and plainly prescribed and limited, that mode is exclusive, and must be pursued, or the contract will not bind the corporation. Dillon, Municipal Corporations, § 449. Section 14 provides that within three days after the passage of an ordinance, copies of the same shall be posted in at least three public places in said city, and all such ordinances shall take effect within five days after such notice unless otherwise ordered. 'When ordinances are required to be published before they shall go into effect, this requirement is essential, and the publication must be in the designated mode.' Dillon, Municipal Corporations, § 331. The time when the ordinance of December 28, 1891, took effect was a question of fact. Any contract entered into prior to that time would be void under the charter."

We see no distinction between a contract for the erection of a city jail and a contract for the purchase of an engine or other equipment for the fire department, and if the power in the one case can only be exercised by ordinance, the same rule must apply in the other.

[2] Nor is there any material distinction in this connection between the powers of a municipal corporation when acting in its political and governmental capacity and when acting with reference to its private

property as claimed by the defendant in error. The city charter prescribed the mode in which the power to provide engines and other apparatus for the department should be exercised, and that mode must be followed whether the power be deemed governmental or proprietary.

"The distinction taken between the powers of a municipal corporation when acting in its political and governmental character and when acting with reference to its private property has no application to the questions involved in the case at bar. Its powers, whether regarded as political or governmental, or those of a mere private corporation, could be exercised only in conformity with the provisions of the charter. The Legislature could impose such restrictions as it thought proper; and it saw proper to require the formalities of legislation for the disposition of the city property, as it did for the imposition of taxes, the regulation of the fire department, and matters connected with the general welfare of the city." Per Field, C. J., in McCracken v. San Francisco, 16 Cal. 591, 621.

So in this case, if the city could only exercise the power to provide engines and other apparatus for the department by ordinance, it is immaterial whether in the exercise of that power it was acting in a governmental or purely private capacity. Inasmuch, therefore, as the city could only act by ordinance, and did not so act, the contract in suit is void, and it is probably immaterial to inquire whether it also comes within the condemnation of section 124 of the city charter. It seems, however, impossible to avoid the conclusion that the contract is void for that reason also. The section provides in the most positive terms that the city of Astoria is not bound by any contract, or in any way liable thereon, unless the same is authorized by city ordinance, and made in writing, and by order of the council, signed by the auditor and police judge, or some other person duly authorized on behalf of the city. This plain unequivocal language is made plainer still by an exception in favor of certain contracts of minor importance, and it would seem that every contract of the city must fall either within the general prohibition or within the exceptions. Contracts in violation of similar statutory provisions have very generally been declared void. In Arnott v. City of Spokane, 6 Wash. 442, 33 Pac. 1063, the court after quoting a similar provision of the charter of Spokane Falls, said:

"The contention of the appellant is that neither the bridge committee nor the mayor had any right or power to bind the city by any agreement or contract not made in writing, and signed by some person duly authorized to execute it. Upon this point we have no doubt of the correctness of appellant's position. While a municipal corporation would, unless restricted by law, have a right to make contracts in reference to its corporate business in any manner it might deem proper, yet, where the mode of contracting is expressly provided by law, no other mode can be adopted which will bind the corporation. This principle results from the fact that municipal corporations derive all their powers from their charters. * * * In fact, so far as we have observed, the authorities are practically uniform on this question."

See, also, Paul v. Seattle, 40 Wash. 294, 82 Pac. 601.

The only authority cited against this rule is Beers v. Dalles City, 16 Or. 334, 18 Pac. 835. In that case the action was brought on a city warrant given for labor performed on a sewer, and the court held that a provision of the charter of Dalles City similar to section 124, supra, had no application to the case: First, because the provisions of the

city charter under which the labor was performed on the sewer were complete within themselves, and left the mode of doing the work and paying therefor entirely to the discretion of the city council; and, second, because the provision had no application to executed contracts. It was expressly admitted, however, that the provision would apply where an ordinance was required by the city charter, and inasmuch as an ordinance was required in this case, the Beers Case is not controlling.

[3] There is no merit in the claim that the city is estopped. To so hold would, in a large measure, abrogate the city charter. If the contract was void when made, it is still void unless ratified by competent authority, and there has been no such ratification.

"To determine the effect of these acts, as a ratification of the sale, it is necessary to consider the conditions essential to a valid ratification. To ratify is to give validity to the act of another. A ratification is equivalent to a previous authority. It operates upon the act ratified in the same manner as though the authority had been originally given. It follows, as a consequence, that where the authority can originally be conferred only in a particular form or mode, the ratification must follow the same form or mode. Thus, if an authority to execute a deed of a private person must be under seal, the ratification of the deed must be also under seal; and where an authority to do any particular act on the part of a corporation can only be conferred by ordinance, a ratification of such act can only be by ordinance."

"It may sometimes seem a hardship upon a contractor that all compensation for work done, etc., should be denied him; but it should be remembered that he, no less than the officers of the corporation, when he deals in a matter expressly provided for in the charter, is bound to see to it that the charter is complied with. If he neglect this, or choose to take the hazard, he is a mere volunteer, and suffers only what he ought to have anticipated. If the statute forbids the contract which he has made, he knows it, or ought to know it, before he places his money or services at hazard. The analogy drawn from the obligation of an individual to pay for work which he accepts, although there has been no previous contract for its performance, wholly fails to reach the present case. Here, neither the officers of the corporation nor the corporation, by any of the agencies through which they act, have any power to create the obligation to pay for the work, except in the mode which is expressly prescribed in the charter; and the law never implies an obligation to do that which it forbids the party to agree to do." Zottman v. San Francisco, 20 Cal. 96, 81 Am. Dec. 96.

It is only necessary to add that the ordinance creating the fire department and providing that the fire and water committee should purchase all supplies for the fire department and order all necessary repairs, subject to the ordinances of the city, is not a compliance with the charter requirement that the power granted to the city council to provide engines and other apparatus for the department can be exercised only by ordinance. We are therefore of opinion that the contract in suit is void, and there can be no recovery thereon. Had the city accepted the fire apparatus and appropriated the same to its own use, an action in some form might lie against it, but that question is not now before us.

For the reasons stated the judgment is reversed and the cause remanded, with directions to sustain the demurrer to the complaint, and for further proceedings not inconsistent with this opinion.