Argued and submitted May 11, affirmed July 13, 1981

ANDAL,
*Respondent,*

*v.*

CITY OF SALEM,
*Appellant.*

(No. 112,691, CA 19149)

630 P2d 1344

Jeannette M. Launer, Assistant City Attorney, Salem, argued the cause for appellant. With her on the brief was William J. Juza, City Attorney, Salem.

D. Michael Mills, Salem, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, and Roberts, and Young, Judges.

ROBERTS, J.

## ROBERTS, J.

This is a law action against the City of Salem for services rendered by the plaintiff, a contractor hired by the city for carpentry work. His original contract with the city was for $4,000 worth of labor. The city claims that this amount was amended by action of the City Council to $13,000, and that plaintiff was advised by letter that this amount was to include labor and materials. There is no dispute that the actual costs incurred in the course of plaintiff's work were $18,342 for labor and $6,435 for materials, for which he received only $12,875 from the city. The city claims error in admitting evidence of the cost of the materials and in awarding plaintiff an amount in excess of the $13,000 limitation.

The city successfully demurred to plaintiff's first complaint, which pleaded one cause of action in express contract and two in quantum meruit (one each for labor and materials costs), on the ground that the city, as a municipal corporation, could not be liable in implied contract because it could only contract according to the procedure specified in its charter. Plaintiff's amended complaint, in express contract, sought the same damages.[1] After a trial to the court, plaintiff was awarded $11,901, interest and costs. The court made no findings of fact or conclusions of law.

The city's argument on appeal is the same as that in support of the original demurrer, *i.e.,* that a charter city is not bound by contracts not executed in the form required by its charter. The city argues further that only those who have the authority initially to contract may ratify an improperly executed agreement, and that there was no evidence of such ratification. The city concedes in its brief that had the defendant not been a municipal corporation, plaintiff would have been entitled to introduce evidence of a separate collateral agreement for payment for materials without violating the parol evidence rule. The city maintains it could not, in any event, be liable for more than $124.35, since the limitation on plaintiff's contract was $13,000.

---

[1] The city moved against the second complaint for the reason, *inter alia,* that it was a substantial repetition of the earlier defective pleading. This motion was apparently never ruled on formally.

■ In support of its position, the city maintains that Section 7 of the Salem city charter, detailing the duties of the mayor, which says the mayor "shall sign all legal instruments and documents to which the city is a party" except where otherwise provided, establishes a specific contract procedure. We disagree. Compare the charter provisions cited in the cases establishing the rule defendant attempts to rely on:

Section 148 of the charter of the City of Portland:

"The City of Portland shall not be bound by any contract nor in any way liable thereon unless the same is authorized by an ordinance and made in writing and signed by some person or persons duly authorized thereunto by the Council. But an ordinance may authorize any board, body, officer or agent to bind the city without a contract in writing for the payment of any sum not exceeding two hundred fifty dollars ($250)." *State ex rel v. Funk,* 105 Or 134, 156, 209 P 113 (1922).

The Seaside charter:

"The city of Seaside is not bound by any contract or in any way liable thereon, unless the same is authorized by city ordinance or resolution, and made in writing by order of the common council, signed by the auditor and police judge on behalf of the city; except that this section shall not apply to the board of water commissioners hereinafter provided for." *White v. City of Seaside,* 107 Or 330, 336, 213 P2d 892 (1923).

The Dalles charter:

"Sec. 128. Dalles City is not bound by any contract, or in any way liable thereon, unless the same is authorized by ordinance, and made in writing, and by order of the council, signed by the mayor or recorder on behalf of the city. But an ordinance may authorize any officer or agent of the city, naming him, to bind the city without a contract in writing for the payment of any sum of money not exceeding one hundred dollars." *Beers v. Dalles City,* 16 Or 334, 340, 18 P 835 (1888).

■ The Salem city charter was not submitted in evidence. We may, however, take judicial notice of it. ORS 221.710(1). It contains no provision which could be called a contract *procedure.*[2] The only charter provision having to

---

[2] In fact, Section 6A of the charter gives the city administrator the authority, "[t]o contract for the performance of any work or for the furnishing of any supplies, materials or equipment for each of the departments of the city * * *."

do with contract requirements establishes a five-year limitation and a preference for local labor (Salem City Charter § 24, as amended, 1969.) The city concedes that in the absence of a charter contract provision, the evidence as to plaintiff's costs for materials was proper.

■■ Because there is no charter-imposed limitation on the contract procedure, the contract entered into by the City of Salem is governed by general contract law. *See* 10 McQuillin, Municipal Corporations 199, 212-213, § 29.02, 29.05 (3d ed rev 1981). The parties agree that the initial $4,000 contract limitation was abandoned and that, after plaintiff exceeded this amount, more money was appropriated, and he was told to continue working. There is a conflict in the testimony as to whether plaintiff was informed of a $13,000 limitation. There is, however, evidence from which the trial judge could have concluded that the parties intended plaintiff to complete the required repairs.[3] There is no dispute that the amounts actually expended were necessary or reasonable.

Affirmed.

---

[3] The evidence of the course of dealings between the plaintiff and the city shows a rather confused series of communications regarding payments to be made for the plaintiff's work. Both sides agree that the initial contract, for $4,000, was understood to cover labor only. Nearly six months after work on this contract was begun, having received no bills for plaintiff's work, the city's purchasing agent telephoned plaintiff to inquire how much money he had spent. Plaintiff told him about $8,000, and the agent told him to stop work until the city could come up with more money. Plaintiff then sent the city a bill for $4,698 in labor and $476 in materials. A month later an employe of the city purchasing department, either the same purchasing agent or the purchasing supervisor, telephoned plaintiff and told him the city council had authorized an additional $30,000 for the project and that plaintiff's work should be resumed. The purchasing agent testified the normal procedure for changing a contract payment amount was to send a copy of the "change purchase order" to the contractor; on May 15, two change purchase orders were issued for plaintiff's contract, one adding $3,701 to the total, and a second adding $5,299. Plaintiff claims not to have received either notification.

On June 2 plaintiff submitted a bill for labor and materials through May 31, 1978, including amounts requested on his first bill. This bill totalled $4,770 for labor and $2,931.50 for materials. The city paid this bill on June 31. On July 12, 1978, plaintiff's third bill was submitted, for $6,649 in labor and $1,796 in materials from June 1 to July 10, 1978. No payment was made at that time. It was apparently at this time that the purchasing agent wrote to plaintiff advising him that the dollar amount of his second purchase order should not be exceeded and that this figure included labor and materials. Plaintiff admits receiving this letter. The city, according to the project coordinator, a city recreation superintendent, at this point began an "audit" of plaintiff's charges. It was not until August 8, however, that plaintiff was ordered to stop work.

Plaintiff's next bill was dated August 20 and was for the period July 10 to August 20, 1978; it requested $7,420 in labor and $1,529 in materials. At about this time plaintiff received a payment from the city of $4,698 in labor and $476.65 in materials. This was the last payment made. Plaintiff's final bill, dated September 11, 1978, stated the total cost of the project as $25,519, with total payments of only $12,876, for a balance due of $12,642.