Campbell, Bates, Clen Dening & Meyer for Defendant.

---

(Hamilton County, Common Pleas.)
STATE OF OHIO on the relation of JER-EMIAH M. QUILL v. SAMUEL NIE-MAN et al., constituting the BOARD OF CITY AFFAIRS et al.

---

The board of city affairs has the undoubted right, no difference how formal and legal all of the bids by contractors bidding upon a certain contract or job, may be, to reject all such bids in the first instance, and thereupon advertise anew, or, if any of the bids are informal, or are in the alternative, or are illegal, they can reject such a bid if it is the lowest, and accept the next best responsible bidder. But where a bid is in every sense in strict conformance with all of the terms of the resolutions, ordinances and laws governing the subject, the board can not reject it merely on the ground that the granite offered is not from one of five certain quarries. If in such case the granite offered is "equal in quality to specimen block of standard granite on file in the office of the city engineer", as the specifications require, the bidder must be awarded the contract.

---

Action in mandamus.

The relator was the lowest bidder for the paving with granite of East Pearl street from Front to Martin, and his bid was lower than the enigneer's estimate of the cost cf the improvement. Tne board of city

affairs awarded him the contract, but upon discovering a week later that he proposed to purchase his granite blocks from one Jones, whose Lithonia quarry is not one of the Lithonia quarries whose output has been tested by the board and pronounced of standard quality, the board rescinded its award and refused to sign the contract, although the specifications upon which the award had been made provided that "the blocks may be of any granite equal in quality to specimen blocks of standard granite on file in the office of the city engineer of the board of city affairs."

DAVIS, J.

It is not claimed in the pleadings, nor in the argument of the case, but that all of the necessary legal steps have been taken in this case, and that the relator has complied with all of the necessary steps, except that it is contended on behalf of the defendants that he furnished a sample block of granite and acccmpanied said block with a statement that it was from Lithonia, Georgia, and from the Jones quarries, but that the engineer of the board of city affairs learned a week after the contract was awarded that the relator proposed to furnish granite that he would purchase from a person by the name of Jones, at Lithonia, Georgia; and it is clear and apparent from the answer filed in this case, as it is also from the evidence of the defendants, that the only trouble in this whole case is, that the granite that should be used upon the said street named in said contract should come from one of the five particular granite mines of Lithonia, and not from the Jones mine; and this is clear from the evidence, no matter whether the Jones granite was equal to the standard granite or not.

An attempt has been made to show that Jones could not furnish good granite; but that is no defense. It is nct what he probably might do in the future, or could do. This contract between the board of city affairs of the city of Cincinnati and this relator calls for granite equal to specimens of standard granite now upon file, and it makes no difference what

[COPYRIGHT, 1899, BY CARL G. JAHN.]

part of the world that granite comes from.

The evidence is conclusive upon the point that the only trouble in this whole controversy is, that the granite proposed to be furnished by this relator does not come from these particular five mines at Lithonia, Georgia. If that is not what this evidence given by Mr. Punshon means, then the court does not understand the English language.

Such a defense is not available. It is against public policy, and it is contrary to law. The city of Cincinnati, being a public corporation, matters of great public interests are often more or less involved, and the courts have uniformly said that it will see that public interests shall not suffer. And, at the same time, courts will see that public corporations can not avoid responsibilities any more than individuals, nor commit a fraud, nor have any favorites any more than can a private individual. There is no valid excuse or legal reason in the answer or in the evidence of the city why it should not perform this contract. It is not a matter preliminary, but it is a matter that is final; and nothing more could be done upon the part of the defendants or the relator to consummate this contract, except the placing of their signatures to the document itself.

The Board of City Affairs has the undoubted right, no difference how formal and legal all of the bids may be by contractors bidding upon a certain contract or job, to reject all such bids in the first instance, and thereby advertise anew, or if any of the bids are informal or are in the alternative, or are illegal, they can reject such a bid if it is the lowest, and accept the next best responsible bidder.

In the case at bar the bid of the relator was not in excess of the preliminary estimate. If it was, that would have been a good reason for the Board of City Affairs to have refused to enter into the contract with him. Neither was it in the alternative. But it was a plain and direct one upon the part of the relator, and was in every sense in strict conformance with all of the terms of the resolutions, ordinances and laws governing the subject.

This case is unlike that of State ex rel. Hippard & Schauss v. Commissioners of Franklin county. And this court approves the decision in that case. In that case, in Vol. 1 of Ohio Circuit Court Reports, the court say, on page 197:

"But while bidders acquire rights which the courts will recognize, those rights must always be held subordinate to the public interests, whose protection is the leading object of this statute. At the opening of these proposals the commissioners had an undoubted discretion to reject them all. Certainly such discretion must be exercised for a proper purpose. They would not be permitted to exercise it to accomplish fraud or favoritism. We need not resort to imagination for circumstances in which such a regard for public interests would require the exercise of such discretion. They abound in this case. The evidence shows that the proposal of the relator was in the alternative as to the kind of stone which they proposed to use. A contract founded on such proposal would be fruitful of controversy. Another bidder was asserting a legal right to the same contract. The defendants were told by a competent legal adviser that a contract with the relators founded upon their proposal would be illegal, because in excess of the estimate."

The court, in the same case, further says:

"If the defendants had improperly refused to make an award, the court would have compelled them to enter into a contract, nevertheless. Having improvidently made a conditional award, it was competent for them to rescind it for such reasons as appear here.

"The contract tendered by the relator on the 23d of February is illegal, because it contains none of the stipulations required by section 793, and the alternative writ commands the defendants to execute that contract, or show cause for not doing so."

Therefore it will be seen that in the

case just cited the contract was illegal, and that the commissioners properly refused to award the contract.

In the case at bar every step is legal. Before a contract can be awarded, the party or parties must show that all of the requirements of the law have been substantially complied with. 22 Ohio St., 546; 36 Ohio St., 137; 39 Ohio St. 460.

The defendants rely upon the authority of the case of Edgemore Bridge Works v. County of Bristol, 170 Mass., 528. But the court there finds that the County Commissioners had a right to refuse to enter into a contract with the bidder. And on page 533, the court say:

"There is nothing to indicate an intention to bind the county by a preliminary agreement that a formal contract should be executed in the future."

This case is unlike that one, for the reason that everything that has been done in this case is final and not preliminary. Therefore the wide difference between that case and the one at bar. There the court say it was only preliminary, but in the case at bar, not only preliminary; but the final arrangements had been fully and completely entered into, both upon the part of the Board of City Affairs and that of the relator, as much so as it was possible for parties to do.

In such cases the courts, in Ohio, have uniformly ordered parties to enter into contracts. 19 Ohio St., 97; 21 Ohio St., 311; 39 Ohio St., 188; 4 C. C. 86.

The defendants are hereby ordered to sign said contract with the relator, and temporary injunction is made perpetual.

John C. Healy, for relator.
Corporation Counsel, contra.