DANIEL A. MADDEN *vs.* CITY OF BOSTON & trustee.

Suffolk.    November 22, 1900. — January 2, 1901.

Present: HOLMES, C. J., KNOWLTON, BARKER, HAMMOND, & LORING, JJ.

A. B. made an offer in writing to the managers of a fund held in trust by a city, to sell a lot of land containing 500,000 feet, or any number of feet thereof, at a certain price per foot, and enclosed a plan of the land. The managers on June 29, 1895, voted, that the chairman request the city engineer to make a plan showing five acres (217,800 square feet) of the lot in question on the northwest corner of the lot according to the plan. The chairman did not request the city engineer to make such a plan and the city engineer did not make one. A plan designating five acres of the land was made by another person at the request of A. B. and was shown to the chairman and to some of the managers who did not object to it. Subsequently the managers voted, that the chairman be authorized in behalf of the board to purchase on the terms stated in the bid of A. B. five acres of the land offered to the board by him, "the site having been selected by this board at a meeting held June 29, 1895; and it is further ordered that the chairman is hereby authorized to make the necessary draft on the city treasurer for the purchase of said land, according to the terms of said bid." *Held,* that the last named vote did not make a contract, but was merely an expression of a determination to buy the land and an authorization to an agent to make the purchase. *Held, also,* that the above named votes did not sufficiently designate the boundaries of the lot to satisfy the requirements of the statute of frauds.

CONTRACT, brought by Daniel A. Madden against the city of Boston as trustee under the will of Benjamin Franklin, and

Alfred T. Turner, trustee. Writ dated February 10, 1899. The case came on for trial before *Sheldon*, J., on April 11, 1900. The plaintiff presented a written offer of proof. Thereupon, at the request of the defendant the judge ruled that the plaintiff's offer of proof disclosed no cause of action, and directed a verdict for the defendant. The plaintiff alleged exceptions.

The plaintiff's offer of proof included evidence tending to show the following facts :

That Benjamin Franklin died in Philadelphia, April 17, 1790, leaving a will and codicil by which he left the sum of £1,000 to the inhabitants of the town of Boston in trust, to be managed under the direction of the selectmen, united with the ministers of the oldest Episcopalian, Congregational, and Presbyterian churches in the town, who were to let out the same upon interest to young married artificers under the age of twenty-five years who had served as apprentices in the town ; and that said sum was to be allowed to accumulate for the term of one hundred years, when the testator estimated that the fund would amount to £131,000; that then the board of managers were to lay out at their discretion £100,000 in public works which might be judged of most general utility to the inhabitants, and the remaining £31,000 was to be let out on interest in the same manner for another hundred years, and then be divided between the Commonwealth of Massachusetts and the town of Boston.

This legacy was accepted by vote of the inhabitants of the town of Boston on June 1, 1790, and shortly thereafter the five selectmen and the minister of the First Congregational Church and the rector of King's Chapel organized as a board of managers, selected a treasurer, and began to let out the money to young married artificers under the conditions set forth in the will. Some years afterwards, King's Chapel having become a Unitarian church, in some way and at some time the minister of King's Chapel was dropped from the board, and the rector of Christ Church was substituted. Although the First Congregational Church became Unitarian instead of Congregational, the minister of that church has always acted as a manager of the donation. Some time in 1847, a Presbyterian Church having for the first time been established in Boston, the minister

of the Presbyterian Church was invited to meet with the board
of managers, and since that time has met with them.

The town of Boston became a city on February 23, 1822, and
since that time the aldermen of the city of Boston have acted
with the clergymen as the board of managers of the Franklin
Fund, in place of the selectmen. The managers are also called
the " trustees."

There has always been a treasurer of the fund, who was
usually, although not invariably, an officer of the city, and the
treasurer attended to the duties of lending the money to the
young married artificers, and to other routine affairs connected
with the fund, the managers meeting at intervals, usually for the
purpose of examining the accounts and vouchers of the treas-
urer and approving them.

At a meeting of the managers, on November 9, 1893, at which
all the aldermen and the ministers of the First Congregational
Church, Christ Church, and the Presbyterian Church were
present, after considering and rejecting twenty-six other plans
or propositions for the disposition and use of said Franklin
Fund, it was voted, " That the sum of $322,490.20, being the
amount available on July 1, 1893, shall be devoted to the estab-
lishment of a Trades School."

On January 17, 1894, Samuel F. McCleary, the treasurer of
the fund, who had been treasurer for many years while he was
city clerk, and continued to act after he left the office, paid to Al-
fred T. Turner, the city treasurer, in accordance with the above
vote, the sum of $329,300.48, being the amount of the sum re-
ferred to in the vote, with its accumulations. McCleary still
retained in his hands as treasurer of the board of managers the
sum of $102,455.70, being the balance of the so-called Franklin
Fund.

No expenditures have ever been made from the fund, with
the exception of the expenses of a trip of the board of managers
and the city architect, to visit and inspect several trade schools
and similar institutions in several cities of the United States.
These payments were made by the city architect by drafts
drawn by him upon the fund.

After other proceedings, the board of managers advertised for
bids for land suitable for a site for the proposed Trades School.
Bids were received in response, but none accepted.

At a meeting of the board of managers, held on May 16, 1895, the following letter was received by said board:

"BOSTON, May 16, 1895.
" *To the Trustees of the Franklin Fund, Boston, Mass.:*

" GENTLEMEN : The undersigned respectfully submits to you for consideration a lot of land which in my judgment is the most available as regards location for a site for the Trades School. There is 500,000 feet in the whole lot. You, however, can purchase any amount of feet as you may see fit. The price per foot to be 40$. Enclose plan herewith.

"Respectfully yours,

"H. J. JAQUITH."

Jaquith wrote this letter at the request of the plaintiff and as the plaintiff's agent. The land referred to was at Parker Hill in Roxbury.

At a meeting of the managers held on June 29, 1895, it was voted " That the Parker Hill estate, five acres, having received eight votes, be chosen as the site of the proposed Franklin Trades School." It was voted also " That the chairman request the city engineer to make a plan showing five acres of said Parker Hill lot, on the northwest corner of said lot, according to the plan filed." Five acres contain 217,800 square feet.

Alpheus Sanford was the chairman of the board of managers. He never requested the city engineer to make a plan of any particular five acres of this Parker Hill estate, but one John O'Brien, at the request of the plaintiff, and with the assent of Sanford, had a plan made by a surveyor employed in the office of the city engineer, and the plaintiff offered to prove that this plan was afterwards exhibited to Sanford and to several members of the board of managers, and that none of them, when the plan was exhibited to them, suggested that it did not show the five acres referred to in the votes.

At a meeting of the board of managers or trustees held on December 19, 1895, the following vote was passed:

" Ordered, That Alpheus Sanford be authorized in behalf of the board of trustees of the Franklin Fund to purchase on terms stated in bid of H. J. Jaquith, filed May 16, 1895, five acres

of the land offered for sale to the board by said Jaquith, the site having been selected by this board at a meeting held June 29, 1895 ; and it is further ordered that said Sanford is hereby authorized to make the necessary draft on the city treasurer for the purchase of said land, according to the terms of said bid."

Sanford never purchased the land, or made any draft upon the city treasurer in accordance with the above vote, but the plaintiff offered to prove that Sanford and the plaintiff met by appointment in the City Hall at the office of Alfred T. Turner, the city treasurer of the city of Boston, the trustee in this suit, that the plaintiff then stated in the hearing of Sanford and Turner that he and his wife were ready to execute a deed in any form that might be required of the five acres of the Parker Hill estate referred to in his declaration and offer of proof, or of any other five acres forming any part of the Parker Hill estate, and that he was ready at any time to convey to the board of managers for the city of Boston, or to such person as might be nominated by the board of managers, in fee simple, the land described in an unexecuted deed which the plaintiff and his wife offered to execute, or any other five acres out of the Parker Hill estate referred to ; and that Turner told Sanford and the plaintiff that he did not recognize the validity of the proceedings of the board of managers, and that he believed that the board of managers had no legal authority to dispose of any portion of the Franklin Fund, and that he, Turner, would never honor any draft drawn by the board of managers or Sanford upon the portion of the Franklin Fund in his possession, drawn for the purpose of buying land for the site of a trades school or any other school.    Thereupon Sanford, according to the written offer of proof, told the plaintiff that he and the board of managers would not carry out the terms of the·votes, and that the transaction could go no further.

The plaintiff did not offer to prove that he owned the land, but only that he had an agreement with one Gordon Dexter who owned the land, whereby he had an option to purchase a tract of land on Parker Hill.

Among the questions raised by the written offer of proof and bill of exceptions were the following:

1. As to whether the managers of Benjamin Franklin's donation to the town of Boston are servants or agents of the city empowered to bind it by written contract for the purchase of land.

2. As to whether the parties who, in 1895, claimed to act as the managers of this donation were really managers of the donation.

3. If the *de facto* board of managers in 1895 were agents of the city of Boston who could bind it by contract, had they not exhausted their authority by having voted to lay out or expend the money for a trades school, and selected officers of the city as the persons to actually expend the money.

4. As to whether this board of managers was a public body whose written votes constitute a sufficient memorandum under the statute of frauds.

5. Whether the vote passed by the board of managers authorizing Alpheus Sanford to purchase on terms stated in bid of H. J. Jaquith, May 16, 1895, five acres of the land offered for sale to the board by said Jaquith, is a sufficient contract to purchase the land described in the plaintiff's declaration.

6. As to whether the city treasurer is such an officer or agent of the city of Boston that his declarations are a sufficient excuse to the plaintiff for not acquiring title to the land and offering a deed of it to Mr. Sanford for the board of managers.

7. As to whether, if he is such an officer, his telling the chairman of the board of managers, and a person who wanted to sell land to the board of managers, that, having doubts as to the legality of these proceedings, he would not pay a draft drawn on him, is a sufficient reason for the plaintiff's not proceeding to get a title to the land and making a tender thereof to Sanford or to the board of managers.

Of these questions, the fifth was the only one which the court found it necessary to consider.

*W. G. Thompson,* for the plaintiff.

*T. M. Babson,* for the defendants.

KNOWLTON, J. In the view which we take of this case, many of the grounds of defence relied on by the defendant, and of the questions of law discussed at the argument, need not be considered. If we assume in favor of the plaintiff, without deciding,

that the persons acting as managers or trustees of the Franklin Fund held by the city of Boston, were, at the time of the alleged contract, empowered to bind the city by a written contract for the purchase of land for a trades school, we come to the question whether they made a contract with the plaintiff for the city, as averred in the declaration.

The managers or trustees having advertised for proposals to furnish a suitable lot of land in the city of Boston, " to be for the purpose of erecting thereon a 'Franklin Trades School,'" received among many others the following: " Boston, May 16, 1895. To the Trustees of the Franklin Fund, Boston, Mass. Gentlemen, — The undersigned respectfully submits to you for consideration a lot of land which in my judgment is the most available as regards location for a site for the Trades School. There is 500,000 feet in the whole lot. You, however, can purchase any amount of feet as you may see fit. The price per foot to be 40¢. Enclose plan herewith. Respectfully yours, H. J. Jaquith." In making this proposal Jaquith was acting as an agent of the plaintiff. At a previous meeting it had been unanimously voted by the managers as follows: " That no selection of a site be made unless such selection shall receive at least eight votes of the Board of Trustees." After a consideration of these proposals and the elimination of all but four of them, a vote of the managers was taken at a meeting held on June 29, 1895, by which each member was to express his preference. After these preferences were made known, it was unanimously voted as follows, viz.: " That the Parker Hill estate, five acres, having received eight votes, be chosen as the site of the proposed Franklin Trades School." The estate referred to in the above letter of Jaquith was the Parker Hill estate, but it contained more than ten acres. On the plan accompanying the letter certain lines were drawn in reference to the offer to sell a part of the lot, indicating the part which the plaintiff and Jaquith thought desirable for the use of the managers, but no survey of it had been made, and its area was not known. The five acres referred to in the vote were five acres in that part of the lot indicated by these lines. It was then unanimously voted " that the chairman request the City Engineer to make a plan showing five acres of said Parker Hill lot on the northwest corner of

said lot, according to the plan filed." At that time Alpheus Sanford was chairman of the board of aldermen and chairman of the managers of the Franklin Fund. Sanford made no request under this vote, but afterwards one O'Brien, at the request of the plaintiff, and after indicating his intention to Sanford, and with the assent of Sanford, obtained from a surveyor employed in the office of the city engineer a plan which was made under the direction of O'Brien; and was exhibited by O'Brien to Sanford and to several other members of the board of managers, and no objection was made by any of them to the plan. This plan shows the land described in the plaintiff's declaration. At a meeting of the managers held on December 19, 1895, a vote was passed as follows: " Ordered, that Alpheus Sanford be authorized in behalf of the Board of Trustees of the Franklin Fund to purchase on terms stated in bid of H. J. Jaquith, filed May 16, 1895, five acres of the land offered for sale to the Board by said Jaquith, the site having been selected by this Board at a meeting held June 29, 1895; and it is further ordered that said Sanford is hereby authorized to make the necessary draft on the city treasurer for the purchase of said land according to the terms of said bid." On December 20, 1895, a deed was prepared under the supervision of the plaintiff, which purported to convey from the plaintiff to the " Trustees of Benjamin Franklin Fund," the land described in the declaration; but the deed never was signed by the plaintiff or his wife. It afterwards appeared that the city treasurer, in whose hands was the money belonging to the fund, declined to recognize this vote or the previous votes for the erection of the Trades School as valid, and said that he should decline to pay any draft drawn by Sanford in accordance with this vote. The plaintiff said to Sanford that he and his wife were ready to execute this deed, or any other proper deed to convey the land referred to in the deed, or any other five-acre lot out of the land described in the original plan. Sanford then told the plaintiff that the managers would not proceed further under the vote, and that the transaction was at an end. Within a few days Sanford reported this conversation to the managers, who took no action thereon until, on December 20, 1898, they passed a vote rescinding the vote of December 19, 1895, and the vote of December 28, 1893, pro-

viding for the erection of a Trades School, on which the later vote was founded.

The question before us is whether the vote of December 19, 1895, purports to be a binding contract of purchase by the managers of the fund, or merely a vote under the authority of which a purchase was to be made. Looking first at the form of the vote, it seems to be no more than an expression of a determination to buy, and an authorization to an agent to make the purchase. It contains no words of present purchase. It does not assume the form of a contract. It is not addressed to the landowner, and does not even mention his name. Jaquith, the owner's agent, is referred to only for the purpose of stating what land is to be bought and the terms upon which the purchase is authorized. It purports to be for the guidance of the board of managers and their agent. They were not a municipal corporation whose doings must be shown by public records; but they were managers or trustees acting under the will of Benjamin Franklin.

If we look at the substance of the vote, it does not purport to leave the landowner with a claim to be collected by him from a public treasury, but it provides for a payment to be made by their agent from a fund which had been paid over to the city treasurer for a special purpose, by the treasurer of the Franklin Fund, under the vote of December 28, 1893. Giving authority " to make the necessary draft . . . for the purchase of said land," looks to future action, and seems to imply a purchase to be made, rather than itself to be the conclusion of a purchase.

Examining the evidence in reference to the property to be bought, we have the same and additional indications of a provision for a contract, as distinguished from a contract completed. The vote of June 29, 1895, selecting the site, went no further in designating the land than to determine that the quantity was to be five acres on the northwest corner of the lot, according to the plan filed. That plan did not show the extent nor the boundaries of the five acres. The exact location of the land remained to be determined. The managers, by vote on that day, provided a method for determining it. On December 19, the date of the vote relied on, that method had not been pursued, and this vote refers back to the vote selecting the site. So far as action of the

board is concerned, the location and boundaries of the five acres remained as indefinite on this latest date as on June 29. The directions to Sanford to request the city engineer to make a plan remained in full force, and the fact that O'Brien, representing the plaintiff, had procured a plan from a subordinate in the office of the city engineer, and that Sanford and certain other members of the board who had seen it had not objected to it, did not deprive Sanford of his right, or relieve him of his duty, to obtain from the city engineer a plan, which might or might not correspond with that made by the subordinate. On obtaining the plan referred to in the request to him, he naturally would be governed by it in executing the authority of December 19. That the managers and Sanford were not bound by the plan of the subordinate was recognized by the plaintiff when he offered a deed of the five acres shown on that plan, " or of any other five-acre lot forming any part of that portion of Parker Hill estate described in Exhibit 1," which exhibit is the plan annexed to Jaquith's letter.

The votes relied on by the plaintiff do not sufficiently designate the boundaries of the lot to answer the requirements of the statute of frauds. *Sherer* v. *Trowbridge,* 135 Mass. 500. This fact alone is an important, and almost conclusive indication that the vote of December 19 was intended as a preliminary to a contract, instead of a contract binding from that time. Viewing this vote in all its aspects, we have no hesitation in interpreting it as merely an authorization and implied direction to Sanford, and not as the completion of a contract. The facts of the case differ materially from those of *McManus* v. *Boston,* 171 Mass. 152.

We think it very plain that the votes of June 29 were not passed as a part of a contract, and we do not deem it necessary to consider them more particularly.

                                                        *Exceptions overruled.*