EDGE MOOR BRIDGE WORKS *vs.* COUNTY OF BRISTOL.

Norfolk.   March 3, 1898. — March 28, 1898.

Present: ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*County Commissioners — Proposal for Public Work — Award — Contract — Vote — Agreement to make Contract.*

Where a proposal for doing a public work, and an award made thereon, look to the future execution of the contract, such award is not necessarily a contract of any kind, nor an agreement to enter into a contract based upon the proposal; it is at most a matter to be determined whether such an agreement exists, upon a consideration of the terms and purposes of the award construed in the light of the existing circumstances.

County commissioners advertised for proposals for building a bridge, specifying, among other provisions referring to the contract, that the person to whom the contract should be awarded would be required to "execute the contract within six days from the date of notification of such award and the preparation and readiness for signature of the contract," and in case of failure to do so the certified bank check which was required to accompany the proposal should be forfeited to the county; and providing for a contract according to a form furnished to the bidders. A. submitted a proposal to the commissioners, who voted "that the bid of A. is accepted, and that the contract thereon be awarded to" him. *Held*, in an action by A. against the county, that the vote was not an agreement to enter into a contract with him.

Whether, since St. 1897, cc. 137, 153, it is in the power of county commissioners to bind a county by a preliminary agreement to enter into a future contract for the construction of a public work, *quære*.

CONTRACT. The declaration alleged that, under the provisions of St. 1893, c. 368, and of various acts in amendment thereof and in addition thereto, the county commissioners of Bristol were authorized and directed to widen the bridge between New Bedford and Fairhaven within the county of Bristol, and were authorized and empowered to reconstruct the existing bridge, or to construct a new bridge; and it was further provided that the expense of the construction should in the first instance be borne by the county; and that, acting under the authority so conferred, the commissioners inserted in several newspapers published in the county and elsewhere two advertisements, the material provisions of which were as follows:

" Sealed proposals addressed to the County Commissioners of Bristol County, and indorsed ' Proposals for building the substructure of the middle portion of the New Bedford and Fairhaven Bridge,' and ' Proposals for building the superstructure of the middle portion of the New Bedford and Fairhaven Bridge,' will be received by the County Commissioners of Bristol County at New Bedford, Mass., until 2.30 o'clock P. M. of the 2d day of August, 1897, and at that time will be publicly opened and read at the court house, New Bedford.

" Each bidder will be required to present a certified check upon a National Bank for $5,000, payable to Treasurer of Bristol County, twenty-four (24) hours before the date and hour above fixed for opening the proposals, said check to be returned to the bidder unless he fails to execute the contract should it be awarded to him.

" An agreement for five thousand dollars ($5,000) liquidated

damages will be required for the faithful performance of the contract, with sureties to be residents of or qualified to do business in the State of Massachusetts and satisfactory to said county commissioners.

"The person or persons to whom the contract may be awarded will be required to appear at the court house, New Bedford, with the agreement and sureties offered by them, and execute the contract within six days (not including Sunday) from the date of notification of such award, and the preparation and readiness for signature of the contract; and in case of failure or neglect so to do, he or they will be considered as having abandoned it, and the check accompanying the proposal shall be forfeited to the County of Bristol.

"All bids must be made upon the blank forms furnished by the engineer. Prices must be given in writing and in figures for each material or division of the construction enumerated, which prices are to include and cover the furnishings of all the materials and the performance of all the labor requisite or proper for the purpose, in the manner set forth, described, and shown in the specifications and on the plans for the work and in the form of contract approved by the counsel for the commissioners."

The declaration further alleged that, in accordance with the advertisements, and relying upon the terms and conditions thereof, the plaintiff delivered to the commissioners prior to the time named therein sealed proposals for building the substructure and superstructure of the middle portion of the New Bedford and Fairhaven Bridge, which proposals were upon printed forms furnished by the engineer of the commissioners; that the plaintiff presented to the commissioners previously to the day so named two certified checks upon national banks for $5,000 each, in accordance with the terms and provisions of the advertisements above mentioned; that the plaintiff did everything required of it under the terms of the advertisements to entitle it to the award of the contracts named therein; that thereafter, at a meeting of the commissioners held on August 13, 1897, at which all three of the commissioners were present, a vote was duly passed and entered upon the records of the commissioners, the material part of which was as follows:

" Voted, That the cumulative bid of Edge Moor Bridge Works is accepted, and that the contract thereon be awarded to said party " ; that a copy of the vote was mailed to the plaintiff by the clerk of the commissioners, and received by it on August 15, 1897 ; that thereafter upon the same day the plaintiff sent to the commissioners a letter accepting the award of the contract, which was duly received by the commissioners on or before August 18, 1897 ; that the plaintiff on that day, acting by its president, appeared before the commissioners and offered to execute a contract in the form annexed to the proposal submitted by the plaintiff, according to the terms of its proposal, and tendered at the same time an agreement with the required amount of liquidated damages for the faithful performance of the contract with a corporation qualified to do business in the State of Massachusetts as surety ; that the plaintiff was on August 18, and ever since had been, ready and willing and able to execute the contract required by the terms of its proposal and the acceptance thereof by the commissioners, and to furnish an agreement with the required amount of liquidated damages for the faithful performance of the contract with a surety or sureties qualified to do business in the State of Massachusetts, and satisfactory to the commissioners ; but the commissioners refused to execute the contract required by the award, and the plaintiff had suffered great loss.

The defendant demurred to the declaration, assigning various grounds of demurrer. In the Superior Court, the demurrer was sustained, and judgment ordered for the defendant; and the plaintiff appealed to this court.

*O. Prescott, Jr.,* for the plaintiff.

*T. M. Stetson,* for the defendant.

ALLEN, J.   The ground of action relied on by the plaintiff corporation is, not that the county commissioners actually entered into a contract with it, under which it was to do the work, but that they agreed to enter into such a contract, and afterwards refused to do so. To support this view, the plaintiff relies on the vote of the county commissioners accepting its bid and awarding the contract. We have therefore to consider whether, in view of the circumstances, the vote bears that construction.

The vote is to be construed with reference to the advertise-

ments under which the proposals of the plaintiff were submitted. The contract mentioned in the vote is the same contract mentioned in the advertisements, namely, the contract which was to be executed within six days from the date of notification of the award, and of the preparation and readiness for signature of the contract. A formal written contract, according to the form submitted to the bidders, was expressly provided for. After the award, the parties were to meet and execute such a contract. Where proposals and an award made thereon look to the future execution of the contract, such award is not necessarily a contract of any kind, nor an agreement to enter into a contract based upon the proposals; it is at most a matter to be determined whether such an agreement exists, upon a consideration of the terms and purpose of the award, construed in the light of the existing circumstances. In *Lyman* v. *Robinson*, 14 Allen, 242, where it was sought to establish a contract from letters, it was said : " A valid contract may doubtless be made by correspondence, but care should always be taken not to construe as an agreement letters which the parties intended only as preliminary negotiation. The question in such cases always is, Did they mean to contract by their correspondence, or were they only 'settling the terms of an agreement into which they proposed to enter after all its particulars were adjusted, which was then to be formally drawn up, and by which alone they designed to be bound ? " See also *Ridgway* v. *Wharton*, 6 H. L. Cas. 238, and cases there cited ; *Winn* v. *Bull*, 7 Ch. D. 29 ; *Rossiter* v. *Miller*, 3 App. Cas. 1124 ; *Starkey* v. *Minneapolis*, 19 Minn. 203 ; *Eads* v. *Carondelet*, 42 Mo. 113 ; Pollock, Con. 41. Especially where the supposed contract is found only in a vote passed by a board of public officers, which looks to the preparation and execution of a formal contract in the future, care must be taken not to hold that to be a contract which was intended only to signify an intention to enter into a contract. See *Dunham* v. *Boston*, 12 Allen, 375 ; *Water Commissioners* v. *Brown*, 3 Vroom, 504, 510.

In the present case, the county commissioners had advertised for proposals for doing a public work, with careful provisions looking to the final execution of a formal contract between themselves and the bidder whose proposals should be accepted,

The bidders were to be bound to stand by their proposals, under a certain penalty or forfeiture. But the county was not to be bound until subsequently it should agree to be bound. The plaintiff concedes that no contract was made under which the work was to be done, but insists that the county commissioners did agree that they would thereafter enter into such a contract. We are unable to put that construction upon the vote. While it is possible for a party to agree in express terms to enter into an executory contract in the future, (*Drummond* v. *Crane*, 159 Mass. 577, and *Pratt* v. *Hudson River Railroad*, 21 N. Y. 305,) the present case is not one of that description. The vote was but a step in the negotiation. It showed an expectation and an intention, for the time being, to enter into a contract with the plaintiff upon the basis of its proposals. But the execution of the contract was an act to be done in the future, and till that should be done no intention to be legally bound is fairly to be inferred. The vote meant merely to say that the plaintiff's proposals were accepted, subject to the preparation and execution of a formal contract. There is nothing to indicate an intention to bind the county by a preliminary agreement that a formal contract should be executed in the future.

This is especially apparent when the state of the existing legislation concerning the powers and duties of county commissioners is considered. By St. 1897, c. 137, § 2, it was provided that all contracts made by county commissioners for the construction of public works, if exceeding eight hundred dollars in amount, shall be made in writing, after notice for proposals therefor has been published; that all proposals shall be publicly opened in the presence of a majority of the commissioners, and a record thereof made upon their record; that all such contracts shall be in writing, and recorded in a book to be kept for the purpose with the records of the county; and that no contract made in violation of the provisions of this section shall be valid against the county, and no payment thereon shall be made from the county treasury. By St. 1897, c. 153, a greatly increased strictness was established in respect to expenditures by counties, and the duties of county commissioners in respect thereto were defined, and their powers limited. In these statutes, the purpose of the Legislature to prevent wasteful or unnecessary county expenses is clearly mani-

fested, and it is open to doubt whether it would now be in the power of county commissioners to bind a county by a preliminary agreement to enter into a future contract for the construction of a public work.    This question, however, need not now be determined, because it is quite obvious that the county commissioners of Bristol County were seeking to conform carefully to the spirit of the provisions of the statutes, and that by their vote they did not intend to bind the county by a preliminary agreement, such as that upon which the plaintiff relies.

*Judgment for the defendant affirmed.*