EDWARD R. BENTON *vs.* SPRINGFIELD YOUNG MEN'S CHRISTIAN ASSOCIATION.

Suffolk.   March 18, 1898. — March 28, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Architect's Services — Vote — Contract.*

A committee appointed by a corporation proposing to erect a building issued a "notice to architects" inviting them "to participate in the competition for plans on the conditions" therein stated, one of which was that "the committee reserve the right to reject any and all of the designs submitted." A., among other architects, presented to the committee a full set of drawings of the proposed building.   The committee met and voted "that we proceed to examine drawings and specifications presented to us," and "select the architect who has the largest number of votes"; and on the next day the committee met again, when A. was found to have the largest number of votes, and the committee then voted to and did reject all the plans submitted, and also voted that A. "be chosen architect in accordance with the vote of last night."   The committee did not communicate this vote to A., but he was informed of it unofficially by two members of the committee.   This vote remained on the books of the corporation for forty days without being changed, and was then rescinded.   *Held*, in an action by A. against the corporation, that there was no contract made with him.

CONTRACT, to recover damages for the refusal of the defendant to allow the plaintiff to perform the duties of architect in the erection of a building.   The case was sent by the Superior Court to a referee.

At the hearing before him, it was admitted that the defendant was a corporation and, at a duly called meeting, appointed a building committee, with full power of obtaining plans and specifications for a new building in Springfield, and also to make all contracts for the erection and completion of such building. The referee, after hearing certain evidence, directed that the plaintiff make an offer of proof of the whole case in writing, in order that such ruling might be made thereon as to bring conveniently before the court the questions of law involved.

The plaintiff thereupon submitted an offer of proof, upon which the referee ruled that, as matter of law, it was not sufficient to maintain the plaintiff's case; and reported such question of law to the court.

The award of the referee was returned into court, and the defendant moved that such award be accepted and confirmed. *Mason*, C. J. so ordered, and directed judgment thereon for the defendant; and the plaintiff alleged exceptions.

The facts appear in the opinion.

*E. R. Anderson*, for the plaintiff.

*S. Lincoln*, for the defendant.

ALLEN, J.   The " notice to architects " issued by the committee of the defendant invited the plaintiff and other architects " to participate in the competition for plans, on the conditions " therein stated. One of these conditions was that " the committee reserve the right to reject any and all of the designs submitted." According to the plaintiff's offer of proof, he presented to the committee a full set of drawings of the proposed building. Other architects did the same. The committee thereupon, on May 19, 1893, passed a vote " that we proceed to examine drawings and specifications presented to us on basis of compliance with each and every requirement in our letter of invitation, and after considering and discussing each requirement separately a vote of the committee be taken as to which plan best meets the letter of requirements and the needs of the association, and that on completion of this examination we select the architect who has the largest number of votes." The offer of proof also states that the committee " agreed that the person who should receive the greatest number of votes should superintend the construction of the same." This can mean only that they so agreed amongst

themselves.   The next day, another meeting of the committee was held, and the plaintiff was found to have received the greatest number of first marks in the competition.   Afterwards at this meeting the committee voted to reject all the plans submitted, and to return them to their owners, and all the plans were rejected.   Immediately after this vote had been passed, another vote was passed that the plaintiff " be chosen architect in accordance with the vote of last night," the words " vote of last night " having reference to the receipt of the greatest number of first marks.   This vote remained upon the books of the defendant for forty days without being changed, at the end of which time it was rescinded.   The committee did not, as a committee, communicate this vote to the plaintiff or ask him to act under it, but two members of the committee notified him that he had been appointed as architect of the building, and this fact was known to the secretary of the committee, and also to other members of the committee, who made no objection to the notification, and did nothing in regard to the matter until the time of passing the vote of rescission.   On July 3, 1893, the plaintiff wrote a letter to the committee claiming to act as architect, and saying that he had just heard that the committee had lately taken action which appeared to show their intention to deprive him of the position. The committee answered that no contract with him had been made.   The offer of proof stated that this letter of the plaintiff was written within the forty days ; but by the dates given the time is forty-four days.   No explanation of this apparent inconsistency has been given to us, but in the view we take of the case it becomes immaterial.   The subsequent statement, that these letters were not written until after the vote appointing the plaintiff had been upon the books for about forty days, and the members of the committee had known that the plaintiff had been notified as aforesaid, must be construed to refer only to those members of the committee previously referred to, as knowing the fact of the notification given to the plaintiff by two members of the committee.

It is apparent, in the first place, that no contract arose out of the " notice to architects " and the presentation of plans by the plaintiff, because the right to reject any and all of the designs submitted was expressly reserved, and this right was exercised by a formal vote.

The plaintiff however contends that his presentation of plans was an offer of his services as architect of the building, and that this offer was accepted by the vote of May 20.   There is nothing in the offer of proof to support this position.   The notice to architects called simply for the submission of plans, with a description and explanation of them.   Rejected designs were to be returned to their authors without any compensation.   The plaintiff submitted drawings " in the manner specified."   There is nothing to show that either by express words or by implication he offered or was understood to offer his services as architect, unless his plans should be accepted.  The vote rejecting his plans rejected all that he had offered.

The new vote, that he be chosen architect, was not an offer to him.   It was not communicated to him by the committee, nor voted to be so communicated.   Those members who gave notice of the vote to the plaintiff did not act for or by authority of the committee.   Their notification was not official, and did not purport to be so.   The vote did not specify any terms or duties in detail, and it was not in form or intention a contract or the offer of a contract.   It was merely an initiatory step, signifying the intention or purpose of the committee, and was not an act by which they meant to be bound as by a contract.   If the plaintiff had notified them at once that he would act as architect, in pursuance of their vote, they might have answered that their vote was not a proposal or offer to him.   *Shaw* v. *Stone*, 1 Cush. 228, 244.   *Dunham* v. *Boston*, 12 Allen, 375.   *Sears* v. *Kings County Elevated Railway*, 152 Mass. 151.   *Edge Moor Bridge Works* v. *County of Bristol*, ante, 528.

If the plaintiff's letter was sent after the formal rescission of the vote, the plaintiff would fail to maintain his case for the additional reason that his acceptance of an offer after it had been recalled would be too late.   But the decision is not put upon that ground, because upon the facts stated the vote was not a proposal or offer to him, and he could not convert it into a contract by signifying his acceptance of it, even though he acted promptly.

*Exceptions overruled.*