Thomas F. McManus vs. City of Boston.

Suffolk.   January 24, 1898. — May 19, 1898.

Present: Field, C. J., Allen, Knowlton, Lathrop, & Barker, JJ.

*Equity — Specific Performance — City — Vote of Street Commissioners — Statute of Frauds — Memorandum — Agency — Fraud — Facts found by Report — Unconscionable Contract*

The recorded vote of a corporation, or of a committee acting upon a subject over which the committee has power, is a sufficient memorandum within the meaning of the statute of frauds, Pub. Sts. c. 78, § 1.

It is not necessary that the memorandum should be addressed to the other party to the contract, so far as the statute of frauds, Pub. Sts. c. 78, § 1, is concerned; nor, if it was passed as an offer to the plaintiff in a bill for specific performance, or as an acceptance of his offer, is it necessary that the vote should be addressed to him.

In this case, which was a bill in equity against the city of Boston for a decree of specific performance of an agreement to purchase land of the plaintiff, the court said that the vote of the board of street commissioners to purchase the land for the city for school purposes constituted a contract of purchase, the plaintiff having signed on the same day a written agreement under seal to convey the land to the city for the sum named, of which contract to purchase the vote was a sufficient memorandum within the meaning of the statute of frauds, Pub. Sts. c. 78, § 1; and that as the price, which was considerably more than the amount paid by the plaintiff for the land not long before, he having purchased the same in anticipation of the action of the school committee and street commissioners, was not shown to be exorbitant, the contract was not shown to be unconscionable; and that the plaintiff was entitled to a decree.

Bill in equity, for specific performance of an agreement to purchase a tract of land of the plaintiff. Trial before *Holmes,* J., who reported the case for the consideration of the full court, the plaintiff to have a decree unless the report disclosed grounds for denying specific performance. The facts appear in the opinion.

*R. M. Morse & S. Davis,* for the plaintiff.

*T. M. Babson,* for the defendant.

Barker, J. On October 27, 1896, the school committee of the city of Boston, having power, under St. 1895, c. 408, § 2, with the approval of the mayor, to designate for school purposes lands which the board of street commissioners shall thereupon take by purchase or otherwise, passed an order requesting the

board of street commissioners to take by purchase or otherwise
the land which the plaintiff by this bill seeks to compel the city
to take and pay for, and this order was subsequently approved
by the mayor. When the order was passed, the plaintiff was
not the owner of the land. The approval of the order by the
mayor took place on November 5, 1896, and on that day the
plaintiff bought the land for $5,700, in anticipation of the action
of the school committee and street commissioners, and shortly
after offered it to the city for $9,500, saying that that was a
fair price, and not disclosing what the land had cost him. On
December 22, 1896, the board of street commissioners voted to
purchase the land for the city of the plaintiff for school pur-
poses, for the sum of $9,500, and on the same day the plaintiff
signed a written agreement under seal to convey the land to the
city for that sum. The bill alleges that the plaintiff on that
day agreed in writing with the board of street commissioners to
sell the land, to the city for the sum of $9,500, which the city
through the board agreed to pay, and the answer alleges that on
that day the plaintiff offered the land to the board of street
commissioners for the sum of $9,500 by the written paper of
that date signed by him and above mentioned. The answer
denies that there was any agreement on the part of the board of
street commissioners other than that contained in its vote of
December 22, 1896, which was to purchase the land of the
plaintiff for $9,500. The report does not state whether or not
this vote was communicated to the plaintiff. It was communi-
cated on the day of its passage to the school committee, who, on
January 4, 1897, passed an order that the sum of $9,500 be paid
to the plaintiff for the land upon his giving to the city a deed
satisfactory to its law department, 'and also passed another
order transferring funds to enable the payment to be made.
The plaintiff's deed not having been accepted, nor the price
of the land paid to him, he brings this bill.

The answer alleges that $5,700 was the full value of the land,
and that $9,500 was an exorbitant and excessive price for it.
There has been no replication, and the report does not find
directly whether the fair value of the land was $5,700 or $9,500.
The bill alleges that the parties agreed, the plaintiff to sell,
and the defendant through the board of street commissioners

to pay, $9,500 for the land, and the answer denies that there was any agreement to sell and purchase as alleged. The report does not find whether or not there was in fact such an agreement, but states that the presiding justice ruled " that the vote only purported to be an authority to the proper hand to accept from the plaintiff a deed when made out, and information to the school committee, and that it did not purport to be addressed to the plaintiff, or to make an executory contract with him before the deed should be passed." The report further states that the defendant contended that the street commissioners were not its agents, and had no power to bind it by an executory contract, and that the plaintiff relied on the vote of December 22, 1896, as an acceptance of the offer contained in his covenant to sell, and as a sufficient memorandum under the statute of frauds. The report also states that the case was heard on the pleadings annexed, which were the bill and answer, and upon certain admissions of counsel. The admissions are not stated, but it is stated that " the only questions were the following," which we understand in substance to be :

1. Whether the vote was an acceptance of the offer contained in the plaintiff's covenant to sell.

2. Whether the vote was a sufficient memorandum under the statute of frauds.

3. Whether the vote purported to be only an authority to the proper hand to accept from the plaintiff a deed when made out, and information to the school committee.

4. Whether the vote purported to be addressed to the plaintiff.

5. Whether the vote did not purport to make a contract with the plaintiff before the deed should be passed.

6. Whether the street commissioners were the agents of the city, and whether they had power to bind the city by an executory contract if they attempted to do so.

7. Whether the facts that the plaintiff bought the land on November 5, 1896, for $5,700 in anticipation of the action of the school committee and street commissioners, and shortly after offered it to the city for $9,500, not disclosing what the land had cost him, are grounds upon which the court in its discretion should refuse a decree for specific performance.

The board of street commissioners was a department of the

city government clothed with the duty and the power, by virtue of the provisions of St. 1895, c. 408, § 2, to take by purchase or otherwise, at the request of the school committee, such lands for school purposes as the school committee with the approval of the mayor should designate. Before the passing of the vote of December 22, 1896, the school committee had designated the plaintiff's land to be taken for school purposes, and, as we assume from the report, the plaintiff had made the offer contained in his covenant to sell. Under these circumstances the natural interpretation of the vote was that it was an acceptance of the plaintiff's offer, and this interpretation is confirmed by the subsequent action of the school committee, on January 24, 1897, ordering the purchase price of $9,500 to be paid to the plaintiff.

Whether the vote of December 22, 1896, was an acceptance of the plaintiff's offer, or was an offer to the plaintiff, it was a sufficient memorandum under the statute of frauds. The recorded vote of a corporation, or of a committee acting upon a subject over which the committee has power, is a sufficient memorandum within the meaning of the statute of frauds, Pub. Sts. c. 78, § 1. *Chase* v. *Lowell*, 7 Gray, 33. *Johnson* v. *Trinity Church Society*, 11 Allen, 123. *Tufts* v. *Plymouth Gold Mining Co.* 14 Allen, 407. *Townsend* v. *Hargraves*, 118 Mass. 325, 335. *Argus Co.* v. *Albany*, 55 N. Y. 495. *Grimes* v. *Hamilton County*, 37 Iowa, 290. *Marden* v. *Champlin*, 17 R. I. 423. Browne, St. of Frauds, § 346.

The vote of December 22, 1896, as we construe it, purports to be more than an authority to the proper hand to accept from the plaintiff a deed when made out, and information to the school committee. Under St. 1895, c. 408, § 2, it was the duty of the board of street commissioners to take the land for school purposes by purchase or otherwise. The plaintiff was the owner of the land, and he is named in the vote which is to purchase the land of him for a sum mentioned. If, as the report assumes, his offer to sell for that sum was made before the vote was passed, the vote was an acceptance of his offer, and an agreement on the part of the board to purchase the land of him, as well as an authority to accept a deed from him, and a means of information to the school committee. If the plaintiff's offer did not precede the passage of the vote, then the vote was an offer

to him to purchase the land from him at the price named, and his covenant of the same date was an acceptance of this offer. If the vote did not purport to be addressed to the plaintiff, it was yet an act done by the board of street commissioners in pursuance of its power and in discharge of its duty to take the land by purchase or otherwise, and it was either an acceptance of the plaintiff's offer, or it was an offer to him which he could accept. It is not necessary that the memorandum should be addressed to the other party to the contract, so far as the statute of frauds is concerned ; nor, if it was passed as an offer to the plaintiff, or as an acceptance of his offer, is it necessary that the vote should be addressed to him. The board which passed it had power to purchase the land of him. If his offer to sell was then before the board, the vote concluded a contract with him to purchase his land, and if his offer was not then in, the vote was itself an offer to him, and by the making of his covenant to sell the vote became part of a contract with him.

The circumstances are wholly different from those of *Dunham* v. *Boston*, 12 Allen, 375. There the vote was in form only a recommendation on the part of a board which had the disposal of the public lands, and which was under no obligation to make a disposal of them. Here the vote is in form a vote to purchase, for a sum named and of a person named, who was the owner, and it was the duty of the board which passed the vote to take the land for the defendant for school purposes by purchase or otherwise. In *Dunham* v. *Boston* the vote did not import a contract, but was merely a step which might result in a sale. So in *Edge Moor Bridge Works* v. *Bristol County*, 170 Mass. 528, the vote was but a step toward the making of an executory contract. But here the vote itself imports a contract of purchase by its own terms, and it must, we think, be construed as a binding agreement to purchase, either upon its passage if the plaintiff's offer to sell was then in, or upon the making of his covenant if that was made after the vote.

Under the provisions of St. 1895, c. 408, the board of street commissioners had the power to purchase the land for the city, and it was the duty of the board to take the land for the city by purchase or otherwise. It follows that the board was the agent of the city to make the purchase, and had power to bind the

city by an offer to the plaintiff, and also to bind the city by accepting the plaintiff's offer to sell.

The remaining question is whether the facts that the plaintiff bought the land on November 5, 1896, for $5,700, in anticipation of the action of the school committee and street commissioners, and shortly after offered it to the city for $9,500, not disclosing what the land had cost him, should cause the court in its discretion to refuse a decree for specific performance.

These facts do not of themselves show that the contract was unreasonable or unfair or inequitable, or that it was tainted with fraud or bad faith, or that it would operate as a fraud on the public. The allegations of the answer that the full value of the land was $5,700, and that $9,500 was an exorbitant and excessive price for it, are not found by the report to be true. The circumstances stated in the report are suspicious, but are yet consistent with the fact that the price at which the board of street commissioners voted to purchase the land was a fair one, and that there was no fraud or bad faith. If the price was so exorbitant as to make the contract unconscionable, a court of equity would not decree specific performance. We should not, however, refuse to grant that relief merely because the vendor, ascertaining that a certain parcel of land would be needed for a public purpose, had had the address to purchase it at much less than its fair value, and then to sell it to the city at a fair price, through a board charged with the duty of taking it for the city by purchase or otherwise. If the price was exorbitant, the contract might well, under the circumstances, be found to be unconscionable, and one which a court of equity would not specifically enforce. As this was not proved, and as there was a contract of purchase which the city has failed to perform, we think the plaintiff is entitled to a decree.

*Decree for the plaintiff.*