SALVATION ARMY OF MASSACHUSETTS, INCORPORATED, *vs.* E. K. WILCOX POST No. 16, CORPORATION DEPARTMENT OF MASSACHUSETTS, GRAND ARMY OF THE REPUBLIC.

Hampden.   September 26, 1916. — November 6, 1916.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Contract,* What constitutes. *Equity Jurisdiction,* To compel specific performance. *Corporation,* Construction of vote. *Equity Pleading and Practice,* Master's report.

In a suit in equity against an incorporated Grand Army Post to enforce the specific performance of an alleged contract to purchase certain real estate, it appeared that the plaintiff had offered to sell the real estate to the defendant, and that the defendant had passed a vote, "That the president be directed to have the title to the property No. 48 on Bliss street examined and if found good, to purchase said property at a cost not exceeding $26,000: and procure a good and sufficient warranty deed of the same to this corporation," that the defendant's president soon after the vote was passed employed a title company to examine the title, and that before the title company had made its final report on the title the defendant voted to rescind the vote quoted above. *Held,* that the vote quoted was not an acceptance of the plaintiff's offer but only gave the defendant's president authority to buy the property for the defendant, and apparently only to do so in case the title should be found to be good, and that, before the president had taken any action in the matter except to employ a title company to examine the title, his authority was withdrawn by the vote of rescission.

In the same case it was *held,* that for the same reason, namely, that the vote was only preliminary to action by the president which never was taken, the vote could not be construed to be an offer to purchase the plaintiff's land.

In a suit in equity the plaintiff excepted to a master's report, because the master had permitted to be annexed to it certain portions of the evidence which the defendant first had asked to have annexed after the master's draft report had

been submitted to the parties, and this court, after they had reached a conclusion which was founded upon the master's report alone and in no respect upon the evidence reported by the master, *held* that the exception had become immaterial.

BILL IN EQUITY, filed in the Superior Court on December 12, 1914, by the Salvation Army of Massachusetts, Incorporated, a corporation, against the E. K. Wilcox Post No. 16, Corporation Department of Massachusetts, Grand Army of the Republic, also a corporation, to enforce the specific performance of an alleged contract to purchase from the plaintiff a parcel of real estate numbered 48 on Bliss Street in Springfield for the sum of $26,000.

The case was referred to a master, who found the facts that are stated in the opinion. He also made the following finding: "I find that there appeared to be no reason why the plaintiff could not offer to the defendant a good title of the property on Bliss street, and I further find that the reason the defendant did not purchase the Bliss Street property was not a reason connected with the title of the Bliss Street property, but was because the defendant did not consider the Bliss Street property a satisfactory location for its proposed memorial building."

In regard to the reporting of portions of the evidence annexed to the master's report at the request of the defendant, which is mentioned in the opinion, the master in his report made the following statement: "At the request of the plaintiff, I state that the defendant did not make any specific requests for reporting any specific portions of the evidence until after the preliminary report was submitted to both parties. I wish to state, however, that I made a statement at the argument that, after the preliminary report had been submitted to the parties, they could designate what portions of evidence they wished to have reported."

The case came on to be heard on the plaintiff's exceptions to the master's report before *King*, J., who reserved and reported it for determination by this court upon the pleadings and the master's report, the evidence contained therein and the objections and exceptions thereto.

*E. A. Whitman,* (*C. H. Beckwith* with him,) for the plaintiff.

*W. H. Brooks & T. C. Maher,* for the defendant, submitted a brief.

LORING, J.   The vote of the defendant post, which the plaintiff relies on as an acceptance of its offer to sell to it the land here in question, was in these words: "Moved that the president be directed to have the title to the property No. 48 on Bliss street examined and if found good, to purchase said property at a cost not exceeding $26,000: and procure a good and sufficient warranty deed of the same to this corporation." Soon after this vote on October 28, 1914, the president through the treasurer employed a title company to examine the title.   Before the president had taken any other action under the vote and before the title company had made a final report upon the title the defendant voted "to rescind" the vote of October 28, here in question.

We are of opinion that the vote of October 28 was not an acceptance of the plaintiff's offer.   It purports to direct the president of the defendant (first) "to have the title to the property" here in question "examined," (second) "if found good, to purchase said property" at the price named in the plaintiff's offer, and (third) to procure a warranty deed of the same to the defendant.   The vote does not purport by its terms to be an acceptance of the plaintiff's offer so as to bring into being "an agreement which creates an obligation."   In form it is a direction to the president of the defendant to enter into a contract under the conditions there specified and not of itself a vote by which the defendant entered into a contract.   We are of opinion that by the true construction of it the vote was what in form it purports to be, namely, an initiatory step directing the president to make a contract, and (as we have said) not an act by which the defendant made a contract.   The case comes within *Shaw* v. *Stone*, 1 Cush. 228, 244; *Dunham* v. *Boston*, 12 Allen, 375; *Sears* v. *Kings County Elevated Railway*, 152 Mass. 151; *Edge Moor Bridge Works* v. *Bristol*, 170 Mass. 528; *Benton* v. *Springfield Young Men's Christian Association*, 170 Mass. 534; *Madden* v. *Boston*, 177 Mass. 350.   See also in this connection *Wheaton Building & Lumber Co.* v. *Boston*, 204 Mass. 218; *Montgomery Ward & Co.* v. *Johnson*, 209 Mass. 89; *McCormick* v. *Oklahoma City*, 203 Fed. Rep. 921.

It would seem that by the terms of the vote the president was directed and so authorized to purchase only after the title had been "examined" and "found good."   Whether that be so or not, the vote was rescinded before the president took any action under it

except to employ a title company to examine the title. Knowledge of the vote had reached the plaintiff. But that knowledge had not come from the president and there was no pretence that the president had undertaken to buy the property for the defendant or (as we have said) to take any action under the vote except to employ a title company to examine the title.

The plaintiff's main reliance is on the decision of this court in *McManus* v. *Boston,* 171 Mass. 152. In that case the court held that the vote of the street commissioners there in question "imports a contract of purchase by its own terms, and it must, we think, be construed as a binding agreement to purchase, either upon its passage if the plaintiff's offer to sell was then in, or upon the making of his covenant if that was made after the vote." On the evidence in that case it was not clear whether the plaintiff made his offer to sell before or after the street commissioners voted to buy. Later the plaintiff signed a written agreement under seal. Speaking of *Dunham* v. *Boston, ubi supra,* this court in that case said at page 156: "In *Dunham* v. *Boston* the vote did not import a contract, but was merely a step which might result in a sale." The vote in *McManus* v. *Boston* was, "voted to purchase," and nothing more, while the vote in the case at bar was, The president is "directed . . . to purchase," etc. Without going further, this is enough to distinguish that case from the case at bar.

In aid of its contention that by the true construction of the vote of October 28 it was a vote to purchase, the plaintiff has relied upon the terms of the call for the meeting and of the vote by which it was rescinded. The meeting was called "to see if the corporation will rescind the vote passed October 28, 1914, wherein it was voted to purchase the property numbered 48 Bliss street." But the view of the character of this vote taken by the plaintiff was not the view taken by the defendant at that meeting. At that meeting "the chair" was asked "what had been done toward carrying out the vote of October 28, 1914." Comrade Bowen (the treasurer) "replied that nothing had been done committing the corporation to the purchase; that we had engaged the Ellis Title and Conveyancing Company to examine the title, and that their report showed two mortgages on the property jointly amounting to about $14,000, leaving the Salvation Army with an equity of some $12,000; that, beyond this title search, nothing whatever

had been done looking to the purchase of the property or informing the Salvation Army that we intended to purchase." Thereupon the motion, "that the vote of the corporation of October 28, 1914, wherein it was voted to purchase the property, No. 48 Bliss street, be rescinded," was unanimously carried. It hardly can be said that the meeting took the plaintiff's view of the nature of the vote of October 28.

The plaintiff has contended that, if the vote of October 28 was not an acceptance of the offer made by the plaintiff, it was an offer which the plaintiff accepted after it was made. But the same reasons which are decisive against its being an acceptance of the plaintiff's offer are decisive against its being an offer on the part of the defendant, namely, that it was an initiatory step which would ripen into a contract when the president, acting under it, made the purchase he thereby was directed to make.

The plaintiff excepted to the master's report because he annexed to the report at the request of the defendant portions of the evidence, and it appears from the master's report that this request was not made until after the draft report had been submitted to the parties. In the view which we have taken of this case this exception has become immaterial. The conclusion to which we have arrived is founded upon the master's report alone and in no respect upon the evidence reported by the master.

It follows that a decree must be entered confirming the master's report and dismissing the bill with costs. It is

*So ordered.*