AL'S LUNCH, INC. *vs.* CITY OF REVERE.

Suffolk.    May 4, 1949. — June 29, 1949.

Present: QUA, C.J., DOLAN, SPALDING, & WILLIAMS, JJ.

*Contract,* What constitutes, For sale of real estate.

Neither a vote by the city council of Revere, passed on recommendation
of and approved by its mayor, to whom had been submitted an offer
to purchase certain land owned by the city at a stated price, that
"the city solicitor or assistant city solicitor be empowered to sell"
the land to the offeror at the price named, nor a written notification
to the offeror from the city clerk "that the bid submitted by" him
had "been ordered granted by the . . . council and approved by . . .
the mayor" and that he was requested to "call at the office of the
city solicitor . . . and make arrangements for procuring your deed
and title," constituted an acceptance of the offer: it was contemplated
that the deed would be the only contract which the city was to execute
with the offeror.

BILL IN EQUITY, filed in the Superior Court on February
18, 1948, and afterwards amended.

The suit was heard by *Good,* J.

*M. R. Taymore,* City Solicitor, *(R. F. Martino* with him,)
for the defendant.

*P. A. Goldstein,* for the plaintiff.

SPALDING, J.    The plaintiff brings this bill to compel
specific performance of an alleged contract for the sale of
certain real estate in Revere.    From a final decree ordering
specific performance the defendant appeals.

The evidence is reported and the judge made a report of
the material facts.    Concerning the facts there is virtually
no dispute.    We summarize them as follows:  The defendant
owned lots 3, 4, 5, and 6 on Revere Street in the city of
Revere.    At some time during the summer of 1947 the plain-
tiff made to the defendant through its mayor an offer in
writing to purchase these lots for the sum of $900.    On
December 23, 1947, the mayor submitted to the city council

a recommendation that "the city solicitor or assistant city solicitor be empowered to sell lots 3–4–5–6 Revere Street to Al's Lunch, Inc. [the plaintiff], Alfred Grasso, Pres. . . . who has made an offer of $900." At a regular meeting of the city council held on December 30, 1947, the following action was taken with respect to the mayor's recommendation: "Ordered: That the city solicitor or assistant city solicitor be empowered to sell lots 3–4–5–6 Revere Street . . . [to the plaintiff] for a sum not more or less than nine hundred ($900) dollars." This order was approved by the mayor on January 2, 1948. On January 5, 1948, the city clerk of the defendant wrote to the plaintiff as follows: "You are hereby notified that the bid submitted by you for the purchase of a parcel of land in the city of Revere has been ordered granted [*sic*] by the municipal council and approved by . . . the mayor, therefore will you please call at the office of the city solicitor . . . and make arrangements for procuring your deed and title to this property."[1] This was a "regular form letter" and it was the "practice in the clerk's office to send out [such letters] to prospective purchasers where the council had passed some order." Thereafter the plaintiff's president, Grasso, called at the city solicitor's office for the purpose of paying the purchase price and receiving title, but the city solicitor told him that he doubted whether he, as city solicitor, could convey a good title to the land. Grasso then called on the mayor, who suggested that he submit another bid in writing and that he would put it before the council.[2] The plaintiff did not submit another bid.

On March 1, 1948, the city council voted to rescind their order of December 30, 1947, and this action was approved by the mayor on March 9. On March 10 an attested copy of the vote of rescission was sent by the city clerk to the plaintiff.

---

[1] Pursuant to a request by the plaintiff's president the city clerk on February 11, 1948, delivered to him an attested copy of the city council's order of December 30, 1947.

[2] The mayor was not the same person who had recommended the sale, a new mayor and city council having taken office on January 5, 1948.

The defendant's position is that it never entered into a contract with the plaintiff. It argues that the city council's order of December 30, 1947, was only a preliminary step in the negotiations and merely empowered the city solicitor to contract on behalf of the defendant, and did not in itself constitute an acceptance of the plaintiff's offer. We are of opinion that these contentions must be sustained and that the decree of the court below ordering specific performance was erroneous. The case comes within the authority of *Dunham* v. *Boston,* 12 Allen, 375. In that case the plaintiff sought specific performance of an alleged contract to convey a parcel of real estate. By an ordinance of the city of Boston it was provided that the board of land commissioners should have the disposal of the public lands belonging to the city, subject to the approval of the mayor. In 1858 the city council authorized the land commissioners to sell the parcel for which suit was brought (a certain burial ground lot) on the same terms that they were authorized to sell the public lands. Having decided to sell this property, the commissioners on August 1, 1862, advertised it for sale, and the plaintiff submitted a written offer to purchase it for $600. On August 11 the commissioners voted to recommend the sale of it to the plaintiff for the price offered by him. The vote was then sent to the mayor who wrote his approval on it. Subsequently a deed was prepared by the city solicitor but it was never signed and no deed was delivered to the plaintiff, although the plaintiff offered to pay the purchase price. On a report to this court the bill was dismissed. Chapman, J., speaking for the court, said, "The court are of opinion that the evidence does not prove that the defendants contracted with the plaintiff for the sale of the land to him. The vote passed on the 11th of August does not import a contract, even when approved by the mayor. It was not communicated to the plaintiff as a contract, and it does not appear that it was intended to be so. On the contrary, it was to be communicated to the proper officers of the city as an authority to them to execute a deed, and it contemplates the deed as the

only contract which the city was to make with the plaintiff. It was thus a mere preliminary to the completion of the contract" (page 377). In *Edge Moor Bridge Works* v. *County of Bristol*, 170 Mass. 528, 532, it was said, "where the supposed contract is found only in a vote passed by a board of public officers, which looks to the preparation and execution of a formal contract in the future, care must be taken not to hold that to be a contract which was intended only to signify an intention to enter into a contract." See *Benton* v. *Springfield Young Men's Christian Association*, 170 Mass. 534; *Madden* v. *Boston*, 177 Mass. 350, 358; *Wheaton Building & Lumber Co.* v. *Boston*, 204 Mass. 218, 222–223; *Salvation Army of Massachusetts, Inc.* v. *E. K. Wilcox Post G. A. R.* 225 Mass. 136; *Vinal* v. *Nahant*, 232 Mass. 412, 420; *Commonwealth* v. *Albert*, 310 Mass. 811, 815.

In the case at bar the vote of the council on December 30, 1947, did not in itself constitute an acceptance of the plaintiff's offer. As in the *Dunham* case, discussed above, it was intended merely as authority to the city solicitor to execute a deed, and it contemplated the deed as the only contract which the defendant was to execute with the plaintiff. We have not overlooked the fact that the plaintiff was notified of the vote by the city clerk in his letter of January 5, 1948, but that, we think, did not amount to an acceptance of the plaintiff's offer by the defendant. It was merely to inform the plaintiff of the action taken by the council to the end that he might communicate with the city solicitor and consummate the transaction. See *Benton* v. *Springfield Young Men's Christian Association*, 170 Mass. 534, 537. The effect of the vote was not enlarged because the letter stated that the bid had been "ordered granted" by the council. The clerk in his letter was referring to the action taken by the council, and what they did as disclosed by their vote, rather than the clerk's characterization of what they did, must control. The vote and the letter were initiatory steps and did not bind the defendant to a contract to sell the land in question.          *Decree reversed with costs.*