Alfred N. Whiting & another, trustees, *vs.* Commonwealth.

Worcester.    April 7, 1976. — July 14, 1976.

Present: Reardon, Quirico, Braucher, & Kaplan, JJ.

*Contract,* What constitutes, For sale of real estate, Performance and breach.    *Frauds, Statute of.    Pleading, Civil,* Statute of Frauds.

In an action seeking specific performance of an agreement for the purchase and sale of land where it appeared that the Department of Public Works invited bids on a parcel of land owned by the Commonwealth, that the department notified the plaintiffs who had submitted a bid and bid deposit in accordance with the terms of the invitation that their bid was accepted, and that the plaintiffs thereafter paid the balance of the price bid within the time set by the department, an enforceable agreement came into existence no later than the time of the plaintiffs' payment of the balance of the amount bid. [668-670]

In an action seeking specific performance of an agreement for the purchase and sale of land owned by the Commonwealth, where an enforceable agreement had been made, the State Treasurer had no right or discretion under G. L. c. 81, § 7E, as amended through St. 1971, c. 606, to refuse to deliver the contemplated deed to the purchasers; the Treasurer's participation in the conveyance was limited to purely ministerial acts designed to ensure the simultaneous delivery of the deed to the purchasers and the payment of the agreed price to the Commonwealth. [670-673]

In an action seeking specific performance of an agreement for the purchase and sale of land, the defendant's contention that the agreement violated the Statute of Frauds was not considered where the defendant had failed to plead the Statute of Frauds in its answer. [673]

Bill in equity filed in the Superior Court on April 21, 1972.

The suit was heard by *Travers, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Charles B. Swartwood, III,* for the plaintiffs.

*Richard E. Rafferty,* Assistant Attorney General, for the Commonwealth.

QUIRICO, J. This is an action brought by Alfred N. Whiting and Richard W. Dearborn as trustees of the Twenty-five Oak Avenue Trust (plaintiffs) seeking specific performance by the Commonwealth (defendant) of an alleged agreement for the conveyance of a certain parcel of land in the city of Worcester. After trial, a judge of the Superior Court entered a final decree ordering the proceeding dismissed, and the plaintiffs are appealing therefrom.[1] For the reasons hereinafter stated, we reverse the final decree and remand the case to the Superior Court for the entry of judgment to the effect that, consistent with this opinion, the defendant is obligated to convey the land in question to the plaintiffs on the terms and conditions stated in the defendant's "NOTICE TO PROSPECTIVE BIDDERS" which is attached as "Exhibit A" to the plaintiffs' complaint.

This case was entered, tried and decided in the Superior Court before the new Massachusetts Rules of Civil Procedure and the Massachusetts Rules of Appellate Procedure took effect on July 1, 1974, but the record on appeal was prepared and filed after that date. In accordance with the changes made by the new rules, and in view of the new provisions of G. L. c. 258, §§ 1 and 2, as appearing in St. 1973, c. 1114, §§ 337 and 339, respectively, we refer to the proceeding as an "action," to the plaintiffs' original pleading as a "complaint" and to the parties as the "plaintiffs" and the "defendant," and make whatever other similar changes seem appropriate under the new rules.

---

[1] This appeal was originally entered in the Appeals Court and thereafter it was ordered transferred to this court for direct appellate review. G. L. c. 211A, § 10 (A), inserted by St. 1972, c. 740.

The record on appeal consists of the plaintiffs' complaint, the defendant's answer, the findings, rulings and order of the trial judge dismissing the proceeding, the exhibits introduced at the trial, and certain designated portions of the trial transcript. It appears from the docket entries of the trial court that the plaintiffs seasonably requested a report of material facts found by the judge but there is no indication that the judge filed such a report. We assume that the judge adopted as his report the voluntary findings which are included in the record on appeal, but the record does not so state.

We summarize the relevant facts. In July, 1970, the defendant owned a parcel of vacant land in Worcester which it had acquired in connection with the construction of a State highway but which it had not used as part of the highway. The plaintiffs sent a letter to the defendant's Department of Public Works (department) expressing an interest in acquiring the land in order to solve "a very serious parking problem" with respect to an office building of the plaintiffs located on a parcel of land adjoining that of the defendant. As a result of that letter the department and its Commissioners (G. L. c. 16, § 5) took the action described below. The department obtained the approval of certain Federal authorities for the sale of the parcel, the approval being required because the defendant had received Federal aid in the construction of the highway for which it had acquired the land. The department obtained an appraisal of the parcel, resulting in a recommendation of $21,000 as the minimum sale price. It then caused the appraisal to be reviewed by its independent real estate review board which confirmed the recommended minimum sale price. The Commissioners made a determination that the parcel of land in question which had been acquired by the department for highway purposes was no longer required for such purposes, and they voted to sell it at a public sale. G. L. c. 81, § 7E, as amended through St. 1971, c. 606. The department caused a notice to be published in the Worcester Gazette on January 14, 1972, and on January 21, 1972, informing prospective bidders that sealed

bids for the parcel of land would be accepted until February 1, 1972. The notice specified that bids should be accompanied by a payment of ten per cent of the amount of the bid, and that the balance would be payable on notification of the acceptance of the bid by the Commissioners.[2]

Thereafter, and prior to February 1, 1972, the plaintiffs submitted a bid in the amount of $22,126.50 for the parcel of land, together with a certified check for $2,212.65, which was ten per cent of the amount bid. The Commissioners subsequently voted to approve and accept the plaintiffs' bid, and the plaintiffs were so notified by a letter dated February 22, 1972, signed by Edward H. Smith, "Chief Right of Way Agent" for the department. The letter also acknowledged receipt of the check which had accompanied the bid and stated further that the plaintiffs were "required, within one week of receipt of this letter, to forward a certified check in the amount of $19,913.85 representing the balance of your bid, payable to the [department]." The plaintiffs mailed the required check to the department on February 28, 1972.

On March 3, 1972, the plaintiffs received a telephone call from an employee of the department in its "Property Management Section" stating that the parcel of land would be conveyed to the plaintiffs only by a deed restricting its use to the parking of motor vehicles. On March 6, 1972, the plaintiffs wrote to the Commissioners objecting to such a deed and contending that "[s]uch a restriction does not appear in the notice to prospective bidders and therefore cannot be imposed by the [d]epartment." The plaintiffs further claimed that by virtue of the several "documents," copies of which were enclosed with the letter,[3] a valid

---

[2] The notice also stated that "[t]he High Bidder must agree to: 1. Remove and relocate existing chain link fence and plant shrubs for screening purposes on the westerly and southerly line at his expense. 2. Reimburse State for any and all damages to the highway facility resulting from site preparation. 3. Install proper drainage. 4. No Access along westerly and southerly line."

[3] Enclosed in the plaintiffs' letter of March 6, 1972, were copies of: (a) the notice to prospective bidders which appeared in the Worcester

agreement for the purchase and sale of the parcel existed, and demanded delivery of a deed to the parcel in accordance with such agreement. Thereafter, the Commissioners voted to rescind their prior vote approving and accepting the plaintiffs' bid and the defendant has not conveyed the land to the plaintiffs.

The basic issue to be decided by this court is whether on the facts described above the parties had merely engaged in negotiations for the purchase and sale of the parcel of land, or whether their dealings had reached the point where an enforceable agreement for the purchase and sale of the parcel had come into existence. Since there is no disagreement on the facts, the question before us is limited to the legal effect of the facts stated. The judge of the Superior Court ruled "that there was at no time an enforceable agreement entered into by the Commonwealth to convey the subject land without the parking restriction." We disagree, and hold that there was such an agreement.

In reaching his conclusion that the parties had not entered into an enforceable agreement the judge seems to have relied principally on the provisions of G. L. c. 81, § 7E, as amended through St. 1971, c. 606. That statute expressly authorizes the department to "sell at public or private sale any land ... which has been acquired by the department for highway purposes, upon determination by the ... commissioners ... that such land ... [is] no longer necessary for state highway purposes." No question is raised about the department's compliance with that portion of the statute. The statute then provides that "[i]n the event of such public or private sale the department shall execute a deed thereof ... in the name and behalf of the commonwealth, to the purchaser ... and deposit said deed with the state treasurer, together with a certificate

Gazette on January 14, 1972, and January 21, 1972, (b) the plaintiffs' bid, (c) the letter from the department's chief right of way agent, dated February 22, 1972, notifying the plaintiffs of the approval and acceptance of their bid, and (d) the plaintiffs' letter to the department, dated February 28, 1972, transmitting a certified check for the balance of the purchase price for the parcel of land in question.

of the terms of the sale and the price paid or agreed to be paid at said sale. Upon receipt of said price, and upon the terms agreed to in said deed, the treasurer shall deliver the deed to said purchaser."

The contention of the defendant, apparently accepted by the judge, seems to be that notwithstanding the department's invitation for bids on specified terms, the plaintiffs' bid on those terms and payment of the bid deposit, the vote of the Commissioners to approve and accept that bid, the notice by the department to the plaintiffs that their bid was approved and accepted, and the department's request for, and the plaintiffs' payment of, the balance of the price bid, there is no enforceable agreement for the sole reason that the department has neither executed nor sent to the State Treasurer the required deed and certificate of the terms of the sale and price paid or agreed to be paid for the land. We do not agree with that interpretation and application of the statute.

It is our view that on the facts of this case as stated above an enforceable agreement for the purchase and sale of the land had come into existence no later than the time when the plaintiffs, at the department's request, paid the full balance of the amount bid.[4] By that time everything necessary to the creation of a contract, as distinguished from its performance, had occurred. The plaintiffs had made an offer to purchase the land on the terms set forth by the defendant in its public invitation for bids, the defendant had approved and accepted the offer by a formal vote of the Commissioners, unconditional notice of the approval and acceptance had been given to the plaintiffs in writing, and the plaintiffs had paid the full balance of the agreed purchase price. All that remained to be done was for the defendant to perform what it, through the

---

[4] This statement, based on the facts of this particular case, is not intended as a suggestion that an enforceable agreement could not be held to have come into existence when the department notified the plaintiffs that their offer was accepted. On the question whether the vote of the Commissioners was itself sufficient to constitute an acceptance of the plaintiffs' offer, see *McManus* v. *Boston,* 171 Mass. 152, 155-156 (1898).

department, had agreed to perform, and that was to convey the land to the plaintiffs subject only to the conditions stated in the invitation for bids. It was then too late for the department to try to impose on the plaintiffs a new restriction against using the land for purposes other than the parking of vehicles.

At the trial the defendant argued that at any time up to the delivery of the deed it had the right to change its mind, rescind the vote, as it purported to do, and call the whole deal off, in which event the plaintiffs would be without enforceable right or remedy. It is not clear from its brief whether the defendant still makes that argument, but, if it does, the argument is rejected. The defendant reserved no such right to cancel or rescind the deal in any of the documents in the case, no such right is stated or implied in the applicable statutes, and we recognize no such right in the defendant in the circumstances of this case.

For the same reasons stated above, we reject the defendant's argument that G. L. c. 81, § 7E, as amended, gave the State Treasurer any right or discretion to refuse to deliver the contemplated deed to the plaintiffs if the deed was in accordance with the agreement previously made by the parties. The Treasurer's participation in the closing of the conveyance, as contemplated by the statute, is limited to purely ministerial acts designed primarily to ensure the simultaneous delivery of the deed to the purchaser and the payment of the agreed price to the Commonwealth.

The judge stated in his decision that his interpretation of G. L. c. 81, § 7E, as amended, was based in part on the holdings of this court in the cases of *Dunham* v. *Boston*, 12 Allen 375, 377 (1866), *Edge Moor Bridge Works* v. *County of Bristol*, 170 Mass. 528, 531-533 (1898), and *Al's Lunch, Inc.* v. *Revere*, 324 Mass. 472, 474-475 (1949). While each of these three cases involved the interpretation of a statute in some respects comparable to § 7E, each case is distinguishable from the present case in material respects which undermine its value as a precedent for the result reached by the judge in this case.

In the *Dunham* case a municipal board voted to "recommend" the sale of a parcel of land, the vote was approved by the mayor who sent it to the city solicitor who prepared the deed, "but one of the aldermen made some objection, and the deed was not signed." This court held: "The vote ... does not import a contract, even when approved by the mayor. It was not communicated to the plaintiff as a contract, and it does not appear that it was intended to be so. On the contrary, it was to be communicated to the proper officers of the city as an authority to them to execute a deed, and it contemplates the deed as the only contract which the city was to make with the plaintiff. It was thus a mere preliminary to the completion of the contract." 12 Allen at 377.

In the *Al's Lunch, Inc.* case the plaintiff made an offer to purchase four lots from the city for $900. The city council passed, and the mayor approved, an order "[t]hat the city solicitor or assistant city solicitor be empowered to sell ... [the four lots to the plaintiff] for a sum not more or less than nine hundred ($900) dollars." 324 Mass. at 473. In deciding the case we quoted the same language which is quoted above from the *Dunham* case, *supra,* and we held that neither that vote nor a subsequent letter from the city clerk to the plaintiff informing the plaintiff of the vote constituted an acceptance of the plaintiff's offer to purchase the four lots. As to the vote we held that "it was intended merely as authority to the city solicitor to execute a deed, and it contemplated the deed as the only contract which the defendant was to execute with the plaintiff," and we held further that "[t]he vote and the letter were initiatory steps and did not bind the defendant to a contract to sell the land in question."[5] 324 Mass. at 475.

---

[5] Although the vote in the *Al's Lunch, Inc.* case merely authorized the city solicitor to sell the four lots, the city clerk's letter to the plaintiff said that the plaintiff's bid had been "ordered granted" by the city council and approved by the mayor. We held that what the council did "as disclosed by their vote, rather than the clerk's characterization of what they did, must control," and that the vote did not bind the city to sell the land. 324 Mass. at 475.

Thus in the *Dunham* case, *supra*, we had a vote by a board recommending that certain land be sold, but the vote was never communicated to the prospective purchaser nor was it intended to be so communicated. It was intended only to be communicated to other officers of the city. In the *Al's Lunch, Inc.* case, *supra*, we had a vote by the city council which was intended only to authorize the city solicitor to take further steps toward a sale of real estate and was not intended as a contract to sell it. By contrast, in the present case we have an express finding by the judge that "the [defendant] by vote of its commissioners approved and accepted the bid [of the plaintiffs] and on February 22, 1972 so advised the [plaintiffs] and requested the balance of the bid, $19,913.85, which sum the [plaintiffs] mailed to the [defendant] on February 28, 1972."

The *Edge Moor Bridge Works* case, *supra*, arose under a special statute (St. 1893, c. 368) and involved the question whether county commissioners, who had invited bids for a project, accepted the bid of the plaintiff and notified the plaintiff of such acceptance but then refused to execute a contract for the construction of the project, could be held liable for damages in contract for such refusal. We held that there was no liability, and said: "The vote was but a step in the negotiation. It showed an expectation and an intention, for the time being, to enter into a contract with the plaintiff upon the basis of its proposals. But the execution of the contract was an act to be done in the future, and till that should be done no intention to be legally bound is fairly to be inferred." 170 Mass. at 533. Since there is no indication in the present case that the parties intended that any further documents were to be executed before their dealings should give rise to a contract between them, we do not consider the *Edge Moor Bridge Works* case relevant. We intimate no opinion whether we would follow it if we had before us a case involving substantially the same facts.

We note that the same distinctions which we have made of the *Dunham* and *Edge Moor Bridge Works* cases were

also made by this court in *McManus* v. *Boston,* 171 Mass. 152, 156 (1898).

The only remaining matter requiring our attention in this case is the defendant's argument that the plaintiffs should be denied relief because they are seeking enforcement of a contract for the sale of land and that neither the contract nor any memorandum or note thereof is "in writing and signed by the party to be charged therewith or by some person thereunto by ... [it] lawfully authorized." G. L. c. 259, § 1 Fourth. The argument is strictly limited to the authority of Smith, the department's chief right of way agent, to sign the letter of February 22, 1972, informing the plaintiffs that the Commissioners had voted to approve and accept the plaintiffs' bid. Without trying to decide whether that letter was an attempt by Smith to bind the defendant in contract, or whether that letter alone, considered in isolation, was sufficient to satisfy the Statute of Frauds, we conclude that there was sufficient evidence in the record to permit an inference that Smith was authorized to send that letter to the plaintiffs in behalf of the department. On the question whether the Commissioners' vote to approve and accept the plaintiffs' offer was a sufficient memorandum under the Statute of Frauds, see *McManus* v. *Boston,* 171 Mass. 152, 155 (1898).

However, it is unnecessary to pursue this point further because the defendant did not plead the Statute of Frauds in its answer. It has long been the established law that even if we were dealing with an oral agreement for the sale of land, which we are not, the effect of the Statute of Frauds would not be considered if not pleaded. *Gentile Bros.* v. *Rowena Homes, Inc.,* 352 Mass. 584, 590 (1967). *Young* v. *Paquette,* 341 Mass. 67, 76 (1960). *Abalan* v. *Abalan,* 329 Mass. 182, 183 (1952), and cases cited. *Pieczarka* v. *Pieczarka,* 328 Mass. 51, 51-52 (1951). The requirement that the defense of the Statute of Frauds be affirmatively pleaded has been incorporated in the new rules of civil procedure. See Mass. R. Civ. P. 8 (c), 365 Mass. 749 (1974).

The final decree is reversed and the case is remanded

to the Superior Court for the entry of a judgment for the plaintiffs consistent with this opinion.

*So ordered.*